## CHRIS. HOBERG, Plaintiff in Error, *vs.* THE STATE OF MINNESOTA, Defendant in Error.

The State on a criminal prosecution should not be permitted to prove a distinct felony not charged in the indictment, under a pretence of discrediting a witness by impeaching him on a matter immaterial to the issue.

It seems that in all criminal cases, where immaterial testimony has been admitted, and the chances are merely equal that it may have injuriously affected the minds of the jury against the accused, a new trial should be granted.

After the jury have retired to consider of their verdict, the Judge has no more right than any other person to communicate with them, without the consent of, and apart from the prisoner and his Counsel, or notice given them. And this is true even where the communication from the Judge to the Jury was merely to inform them that if they wished any information on matters of law, they should come into the Court and ask for it.

The indictment in this case was found by the Grand Jury of Nicollet County, and the Defendant was tried in Brown County, upon a change of venue. He was found guilty of grand larceny, and sued out a Writ of Error. A Bill of Exceptions was sent up with the writ.

The following are the points and authorities relied on by Counsel for the Appellant:

*First.—Error of Law.—*The Court erred in permitting the testimony of G. A. Brown in folio 19 to go before the jury.

"In criminal cases it is peculiarly the duty of Courts of Justice to prevent evidence being given which would support a charge against the prisoner of which he is not apprised by the indictment, under the pretext of its affording some presumption as to the offence which is the subject of the indictment." 1 *Phil. Ev.* 471.

"The Court will reject evidence of a larceny committed by the prisoners on a preceding day, on the ground that it tended to prove a felony of a totally distinct kind, which had no reference to the subject matter of the prosecution. *Rex vs. Vandercourt & Abbott,* 2 *Leade's Cr. Ca.* 816; 1 *Phil. Ev.* 471.

*Second.—*The Court erred in permitting the said testimony to go before the jury for the purpose alleged of impeaching the testimony of Minnie Hoberg, and herein:

1. Because the said testimony related to a matter irrelevant to the action.

*Rule.*—" The evidence must be confined to the points in issue." 1 *Phil Ev.* 460; *C. and H's notes.*

" No evidence can be admitted which does not tend to prove or disprove the issue joined.   In criminal proceedings the necessity is stronger if possible than in civil cases, of strictly enforcing the rule that the evidence is to be confined to the point in issue, for where a prisoner is charged with an offence, it is of the utmost importance to him that the facts laid before the jury should consist exclusively of the transaction which forms the subject of the indictment which alone he can be expected to come prepared to answer." 2 *Russ. on Cr.* 772; 1 *Phil. Ev.* 477.

" A Court is not bound to receive irrelevant testimony from one party because such testimony had been given by the other party without objection; (and) where irrelevant testimony is permitted to go to a jury, a new trial will be granted, of course, on a bill of exceptions, if the chances are equal that it may have had an injurious tendency on the minds of the Jurors." *The Fars. & Man'rs Bk. vs. Weinefield,* 24 *Wen.* 419.

"On trial for stealing a watch, evidence that the prisoner had been guilty of another distinct felony in stealing a clock, is not admissible for any purpose." *Walker vs. The Comm.,* 1 *Leigh's Rep.* 574, *and further cases quoted in* 1 *Cowen & Hill's notes,* note 323, *p.* 626, *Text. Ph. Ev. p.* 472.

2. Because the evidence of Brown was conclusive of the guilt of the prisoner as to the larceny of the dress unless he (the prisoner) had opportunity to account for the possession of the same.   3 *Starck. Ev.* 483, *note Y.*

And therefore the said evidence for " any purpose " on this trial had an injurious effect on the minds of the jurors.

3d.  Because the witness Minnie Hoberg was not interrogated as to the proposed contradiction.

*Rule.*—" The witness sought to be impeached must himself be in the first place interrogated as to the particulars of the proposed contradiction." 2 *Phil. Ev.* 447, *Cowen & Hill's notes,* note 390, *p.* 760.

It is also the settled rule of the *English nisi prius Ib; Barb. Cr. Law* 431, *etc.*

4. Because the evidence of Brown to contradict or impeach the testimony of the witness, Minnie Hoberg, was a pretext only to prejudice the jury against the prisoner, and it would have been improper to cross examine the witness Minnie as to the proposed contradiction. 2 *Phil. Ev.* 398, 7 *East.* 108, 2 *Camp.* 638, 2 *Russ. on Cr.* 935, 1 *Greenleaf* § 449, *p.* 575.

The Appellant claims herein:

1. That evidence was introduced to impeach the testimony of Minnie Hoberg before she was interrogated as to the point of contradiction.

2. That such contradiction or impeachment was on a collateral matter foreign to the issue and prejudicial to the prisoner.

3d. That the pretence of impeachment was only for the purpose of prejudicing the prisoner before the jury, and of eliciting thereby proof of another and a distinct charge pending against the prisoner on a separate indictment.

4. That the rights of the prisoner were seriously prejudiced thereby, and that under the pretence of discrediting Minnie direct and conclusive proof was laid before the jury of another and distinct charge.

*Third.—The Court erred* in refusing to give the charge to the jury as requested in Folio 20.

The rule being "That no evidence can be admitted which would tend to sustain a charge against the prisoner, of which he is not by the indictment apprised." And the Court in so refusing virtually informed the jury that the matter proposed to be given in charge was not law. If the said matter was under any aspect pertinent to the state of the case " good law," although in other views it might have been improper as an unqualified charge, still the Court erred to the Defendant's prejudice in leaving the jury to infer from his unqualified denial that the matter was not law.

*See authorities in points* 1 *and* 2 *ante.* And a new trial will be granted if the Judge should erroneously instruct the jury in a matter of law, which might have influenced them in their verdict. *Baylies vs. Davis,* 1 *Pick.* 206; *Lane vs. Crom-*

*bie*, 12 *ib*. 177 ; *Boyden vs. Moore*, 5 *Mass*. 365 ; *Dudley vs. Sumner*, *ib*. 438 ; *Hoyt vs. Dimon*, 5 *Day* 479 ; *West vs. Anderson*, 9 *Com*. 107 ; *Doe vs. Paine*, 4 *Hawks* 64 ; 11 *Wen*. 84 ; *Colman vs. Roberts*, 1 *Mis*. 97 ; *Penfield vs. Carpender*, 13 *Johns*. 350. *See also Irvine vs. Cook*, 15 *Johns* 238 ; *Strong & Manning vs. Whitehead*, 12 *Wen*. 64 ; *Tuttle vs. Hunt*, 2 *Cowen* 436 ; *Marquand vs. Webb*, 16 *Johns*. 89 ; *Antoine vs. Cort* 2 *Hill's Rep*. 40 ; *Osgood vs. Manhattan Co*., 3 *Cowen* 612, 621.

Hence Appellant claims in point 3 ;

1. That if the testimony of Brown, alluded to, was properly received as impeaching testimony, that it was the duty of the Court to have directed the attention of the jury to the distinct purpose for which it was so admitted when the said testimony was brought to the attention of the Court by the prisoner's Counsel.

2. That in refusing to so instruct the jury without any qualification whatever, the Court virtually permitted improper evidence to influence the jury.

3. That it did so influence the jury to the prejudice of the prisoner.

And 4. That if the said testimony of Brown was improperly received, no subsequent expression by the Judge in the bill of exceptions or to the Jury can " cure the irregularity " of its reception.

*Fourth.—The Judge erred* in visiting the jury and communicating with them in their room without the consent of and apart from the prisoner's counsel.

"*Oath of officer having charge of Jury*," *Rev. Stat. p*. 569. The provisions for communication between the Judge and jury are ample, and are prescribed by Statute. *Rev. Stat. p*. 569 § 251.

" The fact of a Justice going to a jury after they had retired and answering a question of law put to him, was held not to be an irregularity for which the verdict ought to be set aside. *Thayer vs. Van Fleet*, 5 *Johns. Rep*. 111 ; *Henlow vs. Leonard* 7 *Johns. Rep*. 200 ; *Taylor vs. Betsford*, 13 *Johns*. 487 ;

34

*Brown vs. Croil*, 10 *Johns.* 248 ; *Taylor vs. Betsford*, 13 *Johns.* 487; *see also Thackers' Cr. Ca.* 118.

"For any, even the least intermeddling with jurors, the verdict will always be set aside. 13 *Mass.* 218, 220 ; 1 *Pick.* 38–42.

A new trial will be granted because the Judge, after the Court was adjourned, wrote a letter to the jury respecting the cause which had been committed to them. 1 *Pick.* 337; (*See title Trial U. S. Digest, Vol.* 3.)

Irregular communications from the Court: "so strictly is the independence of the Jury guarded that any communication even from the Court not made in open Court and before the parties will avoid the verdict." *U. S. vs. Gilbert,* 2 *Sumner* 21; *per Curiam Ch. Jus. Parker; U. S. vs. Gilbert, Wharton's Am. Com. Law,* 3139 (*misprint* 3149); *3rd Ed.* 1016, 1 *Pick.* 337 ; 6 *Greenleaf* 141.

And this Appellant further claims in this connexion : That the statement of the Judge as to the extent of the communication had at the interview admitted, is not properly a part of this procedure, because :

1. No authority is vested in the Judge by law to testify in exceptions taken to the misconduct or irregular communications of the Judge with the jury. *Rev. Stat.* 358.

2. Because the irregular communication is fully admitted, and the extent of the communication is a question of fact which the prisoner is precluded from taking issue upon.

*Fifth.—The Court erred* in proceeding to judgment, and herein :

1. Because no transcript of the record was sent from the Court in Nicollet County to the Court in Brown County.

"On removal of a criminal case to an adjoining county for trial, a transcript of the record must be sent to the Court to which it is removed." *Price vs. The State,* 8 *Gill.* 295.

2. Because nothing appears upon the record of either Court to show that the case was removed to Brown county in accordance with the provisions of law as set forth in *Rev. Stat., Chap.* 124, *p.* 554; *The People vs. Mather,* 3 *Wen.* 431.

The *nisi prius* record and *postea,* when returned into this

Court would have shown an offence charged to have been committed in Orleans county, an indictment found there and on trial in Monroe. *Ib.*

The suggestion must be made before the record is sent down for trial. *The King vs. Harris,* 3 *Burr.* 1330 ; *see also Bard. Cr. Laws,* 352 ; *The People vs. Vermilyea et al.,* 7 *Cowen,* 108.

3. Because judgment cannot be perfected. Judgment Roll, how made up. *Rev. Stat.* 571.

The Clerk must keep a register of all the criminal actions in the Court in which he must enter all indictments found in the Court or sent or removed thereto for trial, with the time of finding the indictment or when it was sent up or removed—the time of the arraignment—of the demurrer or plea—and of the trial, conviction or acquittal of the Defendant. *Rev. Stat.* 558.

[The points and authorities of Counsel for the Respondent are not on file.]

THOMAS COWAN, Counsel for Appellant.

JAMES HINDS, District Attorney, for the State.

, *By the Court*—EMMETT, C. J.  The bill of indictment charges the Defendant with stealing in the county of Nicollet certain property belonging to Nathan Myrick and Andrew J. Myrick, of the value in all of about one hundred and sixty-five dollars.

A change of venue was had to the county of Brown, and on the trial which there took place, the Defendant was found guilty of the charge.

We infer from the meagre statement of the evidence, shown by the record, that a witness or witnesses for the prosecution had stated, that in searching the prisoner's house for the property alleged to have been stolen, two dresses for a child had been found in the cellar,—but whether any of the property mentioned in the indictment was also found in the cellar, or on the premises, or what possible connection the finding of these dresses which are not mentioned in the indictment, could have with the offence charged does not appear on the

record, and we are left to mere conjecture or the statements and explanations of Counsel.

We have, however, the testimony of Minne Hoberg, a daughter of the accused, who was examined on the part of the defence in regard to these dresses, and she testifies that parties were there, searching the house, on three different days, and had taken away a great many things. That after one of their visits her mother became very much frightened, and desired to leave the house and move out on their claim; that she, the mother, commenced packing up the children's clothes and other things; that she packed some of the things in a trunk and hid away others in the cellar, and amongst those taken to the cellar, were two white dresses belonging to Raught's child, a child about a year old, which the witness' mother had taken to nurse. She stated that she saw her mother taking them down, but did not know where she put them.

The prosecution then called on G. A. Brown, a witness who had been before examined, and proposed to show by him "that one of the two dresses testified to as having been found in the cellar of the prisoner, was not the dress of Raught's child, but was the dress of a child of the said Brown."

This was objected to on the ground that it tended to support a charge against the prisoner, of which he was not advised by the indictment, and because in point of fact there was, as alleged, another indictment pending against him for the larceny of those identical dresses. The Judge sustained the objection, but still permitted the proposed testimony to come in "for the purpose of rebutting or impeaching the testimony of the witness, Minnie Hoberg," and thereupon the witness was permitted to and did testify against the repeated objections of the prisoner's Counsel, "that in searching the prisoner's house, they found two little child's dresses, *hidden away* in the cellar, one of which he recognized, and was positive was a dress *which had been stolen from the clothes line at his house.*" Exception was taken to the admission of this testimony.

The sole purpose for which the witness Brown was offered,

was to prove to whom one of these dresses belonged, but it is observable that, once he was permitted to testify, the question of ownership was lost sight of in the desire to inform the jury that the dress had been stolen and was found secreted in a suspicious manner. He does not say it was his child's dress, nor to whom it belonged.

We are unable to see anything in the record that would justify the admission of such testimony, even had the question of ownership of the dress been material—and we do not think it was—the witness, had he testified that the dress belonged to his child, should not have been permitted to add to that, the further statements that it had been stolen from the clothes line at his house, and was found hidden away in the prisoner's cellar. These last statements, as before observed, were far beyond what the prosecution proposed to prove by the witness, and were well calculated to prejudice the prisoner in the minds of the jury. The State should not have been permitted on the pretence of discrediting the witness, by impeaching her, on a matter immaterial to the issue, to prove a distinct felony not charged in the indictment. We can scarcely conceive of any testimony more likely to have had an injurious effect upon the minds of the jury.

The cases cited by the counsel for the Defendant, fully sustain the objection here urged, and some go to the extent of holding that in all cases where immaterial testimony had been admitted, and the chances are merely equal that it may have injuriously affected the minds of the jury, that a new trial should be granted.

Another objection exists in the fact that after the jury had retired to consider upon their verdict, the Judge visited and had communication with them without consent of, and apart from the prisoner and his counsel.

This is clearly irregular, whatsoever the motive, and howsoever harmless the communication. The character of the Honorable District Judge is a sufficient guarranty that in the the present case, the motive that prompted the visit was not improper, and we have no doubt that the communication was limited, as stated in the case, to merely informing the jury

that if they desired any information on matters of law, they should come into Court and ask for it.   Still a Judge has no more right to communicate with a jury after it has retired, than any other person, and we must look upon his visit in this case in the same light that we would view the entry of any third person into the jury room, while the jury was in consultation.   The Judge can have no communication with the jury, or give them any the least information, except in open Court in the presence of, or after due notice to the District Attorney and the prisoner or his counsel.   We cannot guard too strictly so dangerous a practice as is here complained of.

The Court below erred in admitting the witness Brown to testify as to the stealing of an article not mentioned in the indictment, and in refusing to set aside the verdict, as asked for by the counsel for the Defendant.

New trial awarded.