## W. C. LESTER ET AL. v. JOHN B. HAYS.

Decided November 25, 1896.

**1. Survey—Adopting Former Survey—Following Footsteps.**

If the surveyor locating land does not run the lines on the ground, but adopts lines run by a former surveyor, the location is determined by following the lines actually run,—the "footsteps" of such former surveyor. See case where it was error to refuse charge to this effect.

**2.. Practice—Judge in Jury Room.**

It is reversible error for the trial judge to go alone into the jury room, though at their request, and confer with the jury about the case, though nothing was said to influence them in passing upon the merits of the case.

APPEAL from the District Court of Burnet County. Tried below before Hon. W. A. BLACKBURN.

*T. E. Hammond* and *Matthews & Browning*, for appellants.—The court erred in refusing to give the jury the special charge asked by these defendants and interveners to be given. Hubert v. Bartlett, 9 Texas, 97; Bolton v. Lann, 16 Texas, 96; George v. Thomas, 16 Texas, 74; Stafford v. King, 30 Texas, 273; Duff v. Moore, 68 Texas, 271.

The testimony almost if not quite conclusively showing that the boundaries of the league in controversy were run and marked by Harvey in 1839 so as to establish the same at the place where defendants and interveners claimed it to be located, and that Pace, when he located the Early certificate, did not make a resurvey of the land, but merely adopted the field notes of the survey made by Harvey, the court, in addition to charging the law relating to ascertaining boundaries where the lines of a survey have been run and marked on the ground, should have charged the law relating to ascertaining boundaries where the survey was not actually made on the ground, but where the surveyor purporting to have made the same merely adopted the field notes of a prior abandoned survey; and, having failed to so charge in its general charge, the court should have given the special charge asked by defendants and interveners wherein the court was asked to charge the jury, that, in ascertaining the boundaries, if they found that Pace did not run the lines, but merely adopted Harvey's field notes, it was their duty to endeavor to follow the footsteps of Harvey and ascertain where he had located and established the lines.

Whether the parol evidence offered by plaintiff was sufficient to identify the land described in the title papers of plaintiff as the same land described in the petition was a question that should have been submitted to the jury, and it not appearing from an inspection of the title papers that they convey the same land as that described in the petition, it was material error for the court to charge the jury that plaintiff had shown a good paper title.

The evidence showing that prior to the institution of the suit the plaintiff had conveyed part of the land sued for, it was error for the court to charge the jury that plaintiff had shown a good paper title.

The court erred in charging the jury as follows: "Applying the evidence to the foregoing rules of law, if you find therefrom that the land in controversy is on the Early survey, then you will find for plaintiff * * * unless you shall further find that the parties owning the adjoining lands were uncertain as to where the true boundary line of the Early west line was and had agreed on each line, and had acted upon and acquiesced in the boundary thus agreed upon, and that the

plaintiff and some or any of the defendants had recognized any particular line as the west line of the Early, and for a number of years while they were adjoining owners of the land acquiesced in a particular boundary. You are then authorized to find that such agreed line is the true boundary, etc." This portion of the charge is erroneous. 1. Because it is unintelligible. 2. It is an attempt to state the law as to agreed boundaries and the law as to establishing boundaries by acquiescence, but fails to state either clearly or correctly. Coleman v. Smith, 55 Texas, 254; Cooper v. Austin, 58 Texas, 494; Medlin v. Wilkens, 60 Texas, 409.

The action of the trial judge in going into the jury room and holding private consultations with the jury, in holding private consultations with two jurors in regard to the verdict, in writing out the verdict, delivering it to the foreman of the jury and instructing him to copy it as the verdict of the jury, all done in the absence of counsel for defendants and interveners, was a clear violation of law and of the rights of appellants. High v. Chick, 81 Hun., 100; Danes v. Pearson, 33 N. E. Rep., 976; Read v. Cambridge, 124 Mass., 567; Taylor v. Betsford, 13 Johns., 487; Neil v. Abel, 24 Wend., 187; Rogers v. Moulthrop, 13 Wend., 274; Benson v. Clark, 1 Cow., 258; Rev. Stats. (1879), arts. 1304, 1305, 1307 and 1308; Crabtree v. Hagenbaugh, 23 Ill, 349; Hoberg v. State, 3 Minn., 262.

*J. G. Cook,* for appellee. No briefs appear on file.

KEY, ASSOCIATE JUSTICE.—*Opinion.*—This is mainly a boundary suit, the principal question being the true location on the ground of the west line of the Francis S. Early survey. The Early was located in 1848 by a surveyor named J. R. Pace. There was testimony tending to show that Pace did not run all the lines of the survey, and especially that he did not meander the Colorado river, as called for in the field notes, but adopted the field notes of an abandoned survey made by John Harvey for one Quincy Hale. The verdict and judgment were for the plaintiff, and the defendants and interveners have appealed.

The interveners asked a charge telling the jury, in substance, that if any of the lines of the Early survey were not run on the ground by Pace when he made the location, and he adopted lines that had been run by a former surveyor, then the lines run by the former surveyor would indicate the true location of such line of the Early survey; and that, in such case, it would be as much the jury's duty to follow the footsteps of such former surveyor as to follow the footsteps of Pace, if he actually ran the lines on the ground.

The court erred in refusing to give this charge. It was founded upon a correct proposition of law, and presented a phase of the case made by certain testimony that was not covered by the court's charge.

The objections urged to the court's charge are not regarded as tenable.

There are some other questions that are not likely to arise again. We

deem it proper, however, to say, that the weight of authority seems to support appellant's contention that it was reversible error for the trial judge, though at the request of the jury, to go alone into the jury room and confer with the jury about the case, without the consent of appellants or their counsel. The high character of the learned judge, his statement filed in the record, and the corroborative affidavits of a majority of the jury satisfy us that there was no purpose on his part, and that nothing was said or done by him, to influence the jury in passing upon the merits of the case. But that is not the test. In Sargent v. Roberts, 1 Pick., 337, the court, through Chief Justice Parker, said: "As it is impossible, we think, to complain of the substance of the communication, the only question is whether any communication at all is proper, and, if it was not, the party against whom the verdict was is entitled to a new trial; and we are all of opinion, after considering the question maturely, that no communication whatever ought to take place between the judge and the jury after the cause has been committed to them by the charge of the judge, unless in open court, and, where practicable, in the presence of the counsel in the cause. The oath administered to the officer seems to indicate this as the proper course. He is to suffer no person to speak to them, nor to speak to them himself, unless to ask them whether they are agreed, and he is not to suffer them to separate until they are agreed, unless by order of court. When the court is adjourned the judge carries no power with him to his lodgings, and has no more authority over the jury than any other person; and any direction to them from him, either verbal or in writing, is improper. It is not sufficient to say that this power is in hands highly responsible for the proper exercise of it. The only sure way to prevent all jealousies and suspicions is to consider the judge as having no control whatever over the case, except in open court, in presence of the parties and their counsel. The public interest requires that litigating parties should have nothing to complain of or suspect in the administration of justice, and the convenience of jurors is of small consideration, compared with this great object. It is better that everybody should suffer inconvenience than that a practice should be continued which is capable of abuse, or at least of being the ground of uneasiness and jealousy." And this appears to be the prevailing doctrine. 2 Thompson on Trials, sec. 2555; 16 Am. & Eng. Ency. of Law, 520; Benson v. Clark, 1 Cow., 258; Taylor v. Betsford, 13 Johns., 486; Neil v. Abel, 24 Wend., 184; Hoberg v. State, 3 Minn., 262; Crabtree v. Hagenbaugh, 23 Ill., 349; Chinn v. Davis, 21 Mo. App., 363; State v. Alexander, 66 Mo., 148; People v. Linzey, 79 Hun., 23; High v. Chick, 81 Hun., 100; Read v. City of Cambridge, 124 Mass., 567; Danes v. Pearson, 33 N. E. Rep., 976; Taylor v. State, 42 Texas, 505. Danes v. Pearson, supra, a recent Indiana case, reviews the authorities, and holds that where the trial judge, without the consent of the parties, enters the jury room while the jury are deliberating on their verdict, and communicates with them, the verdict should be set aside and a new

trial granted, though the communication is harmless in itself and made with the best of motives.

The judgment of the District Court will be reversed and the cause remanded for another trial.

*Reversed and remanded.*