*417 The opinion of the court was delivered by
Valentine, J.:
This is an action brought by Joseph Stager against Eldred Harrington before a justice of the peace of Hiawatha township, Brown county, to recover $779, as damages, alleged to have been caused to the plaintiff’s cattle by reason of the defendant bringing into Brown county, from the country south of Kansas, a herd of cattle commonly known as Indian cattle, or Texas cattle, which herd of cattle communicated to the plaintiff’s cattle a deadly disease commonly known as Spanish fever, or Texas-cattle fever, or splenic fever, and thereby injured and caused the death of many of the plaintiff’s cattle. The action was brought under the act of the legislature of Kansas passed February 26, 1867, with its various amendments adopted in 1872 and 1873, commonly known as the “Texas-cattle law.” (Comp. Laws 1879, p. 929, et seq.', art. 9.) A trial was had before the justice of the peace and a jury of twelve men, which resulted in a verdict and judgment in favor of the plaintiff, and against the defendant for $425 and costs. The defendant then took the case to the district court on petition in error, where the judgment of the justice of the peace was reversed, and the cause was remanded to the justice for a new trial. The plaintiff, Joseph Stager, as plaintiff in error, now brings the case to this court for review, claiming that the district court erred in reversing the judgment of the justice of the peace.
I. A voluminous printed brief has been filed in this court, by the counsel for each of the parties, respectively, each brief containing many matters which should have been left out. Counsel for plaintiff now moves the court to strike from the files, and from all consideration in this court, the brief of defendant, on the ground that it contains matters which are scurrilous, scandalous, libelous, impertinent, disrespectful to the court, insulting to its dignity, and calculated to provoke from the plaintiff’ a reply in kind. "Whether this brief should be stricken from the files of the court, and from all consideration by this court, is the first question presented to us for our *418 consideration. The brief certainly contains very much that has no proper place in any brief. It not only criticises unfairly some of the acts of the trial court, and of the counsel for the plaintiff, as such acts are shown by the record of the-case, but it goes beyond the record of the case for materials,, for the purpose of exhibiting counsel for plaintiff in a ridiculous and unenviable attitude. In our opinion, it treats both the counsel for plaintiff and the justice before whom the-case was tried, with injustice and undeserved indignity. It is certainly a brief that deserves censure. Of course, fair and proper criticism is always allowable. Counsel, in the-presentation of their cases to the supreme court, as well asín their arguments in all courts, must be allowed considerable latitude in the discussion of questions supposed to be involved in their cases; and wherever they find anything that seems-to be wrong, and injurious to their client’s interests, it is-their privilege, as well as their duty, to criticise and expose it. Criticism properly belongs to both courts and counsel;, and everything that has any connection with the case under consideration — everything that can in any manner affect the case, and everything that.in fact transpires in the case, if brought to the attention of the court for its consideration, is-a proper subject for comment and criticism, both by court and counsel; and it may not only be commented upon and criticised in a friendly spirit, but in some cases it may also be the-subject of the severest censure, and even of condemnation and denunciation. But criticism, as we have said before, should always be fair; and in courts of justice it should also be dignified and respectful. It is seldom that anything is gained by unfair criticism; generally it tends to demoralization and wrong, and sometimes it reacts against the party resorting to it. To abuse the adverse party, or his counsel, or his witnesses, as counsel sometimes do, is not only wrong in itself, but it generally reacts against the party whose counsel is guilty of the abuse, and sometimes affects most injuriously the client’s cause. This is especially true in trials before juries; for juries very generally sympathize with the *419 side that is abused. There have been cases in this court, though not many, where counsel have spoken disparagingly or sneeringly of the trial court. Now such conduct does not, in the estimation of the supreme court, lift its author to the loftiest height of professional standing and character. Indeed, we think that such conduct generally tends to lower the professional character of the counsel who feel that it is necessary to resort to it. But while it is wrong to unfairly criticise the actions of any person in cases where the subject-matter of the criticism is really involved ih the case or has some connection therewith, yet it is much more censurable for counsel to go outside of the case to find his materials for his criticism. It is always wrong to drag outside matters into the ease for the purpose of holding up a party or his counsel, or others, to ridicule or contempt; and this is just what the plaintiff claims that the defendant’s brief has attempted to do in the present case. Of course, counsel in the argument of a case must be allowed to occasionally go outside of the mere facts of the case for matters of illustration and argument; but these matters of illustration and argument should be such as are generally recognized — such as all well-informed persons are presumed to know, and such as cannot by any reasonable possibility prove derogatory to the personal character, reputation or standing of any person having any connection with the case. But while the defendant’s brief is unquestionably censurable, yet the plaintiff’s brief is not wholly free from fault. It also contains some matters which have no proper place in any brief; and evidently it tended to provoke some, of the unfair criticism found in the brief of the adverse counsel. We have therefore come to the conclusion to strike both briefs from the files of this court, and to suppress all consideration of their contents, and to decide the case upon the record and the petition in error filed in this court.
We shall now proceed to the consideration of the merits of this case, as presented by the record and the petition in error filed in this court.
II. We shall assume, for the purposes of this case, that the *420 act of the legislature passed February 26, 1867, with its various amendments adopted in 1872 and 1873, commonly known as the “Texas-cattle law,” is constitutional and valid. (Comp. Laws 1879, p. 929, et seq., art. 9.) There certainly is a great necessity for some such law. If that class of men who care nothing for the rights of others were allowed by law to bring cattle to Kansas from Texas and the Indian country whenever they might choose, and thereby spread disease and death among our native cattle, it would either make cattle raising in Kansas so hazardous a business that but few men would wish to engage in it, or it would lead to such concerted force, and possibly mob violence, on the part of the cattle raisers in Kansas, that those who care nothing for the rights of others would hardly dare to bring their southern, death-disseminating cattle among the native cattle of this state. There are several differences between this act of the legislature of Kansas and a similar act of the legislature of Missouri, which the supreme court of the United States, in the case of Railroad Co. v. Husen, 95 U. S. 465, declared unconstitutional and void; and, with these differences, the supreme court of the United States would perhaps declare the act of the legislature of Kansas constitutional and valid. It would not, however, make any very great difference, so far as future cases are concerned, whether the act of 1867, and amendatory acts, were declared unconstitutional or not, for we now have a new and different act, intended to effect the same 'purpose, passed in 1881. (Laws of 1881, p. 292.) It is unnecessary to say anything with reference to § 1, chapter 82, of the Laws of 1861, page 279, for this action is not prosecuted under that section, and that section can have no possible application to this case.
III. Justices of the peace may allow bills of exceptions in eases tried before them, whether tried before the justice alone or before the justice and a jury. (Justices’ Act, §§112, 112a, Comp. Laws 1879, p. 718.) We do not think that the justice is in any case required to use a seal, for there is no provision of law anywhere requiring or allowing him to have a seal. *421 Certainly in a ease like this, where the case is tried before the justice and a jury, the justice is not required to use a seal. [Sec. 112, supra.)
IV. We do not think that the recess of two or three minutes taken by the justice’s court, without the justice’s admonishing the jury, could possibly, have worked any prejudice to the rights of either party. Neither party objected or took any exception at the time, and nothing prejudicial is shown. (The State v. Stackhouse, 24 Kas. 445, 454.)
V. It.appears that after the jury retired to consider of their verdict, the justice of the peace entered the jury-room, in the absence of the parties and their counsel, and gave to the jury instructions. As to whether he gave them the same instructions only which he had previously given.them before they retired, or whether he gave them some additional instructions, the evidence is contradictory. It was error, however, for the justice to even enter the jury-room while the jury were deliberating upon their verdict. And his giving them instructions increased the error; and if he also gave the jury any instructions in addition to those given before they retired to consider of their verdict, the error was still greater. (The State v. Brown, 22 Kas. 222, 230, 231; Hoberg v. State, 3 Minn. 262; Fish v. Smith, 12 Ind. 563.)
VI. The evidence in this ease tended to show that the plaintiff’s herd of cattle were born and raised within six miles of Magazine, in Logan county, Arkansas, and that they were purchased there by the plaintiff, and shipped to Kansas, and that they had never been in the Indian territory nor in Texas, and that none of them were Indian cattle or Texas cattle. The record shows that the justice of the peace refused to give any instructions to the jury that if the cattle were not Indian cattle or Texas cattle, and had not been brought from the Indian country south of Kansas, or from the state of Texas, the plaintiff could not recover. In this we think the trial court erred; but we shall have more to say upon this subject hereafter, and before we conclude this opinion.
*422 VII. The same reason that made the refusal to give said instructions to the jury erroneous, also made the admission of the testimony of the witness J. P. Winslow erroneous. Such testimony was, in substance, that the people living in the vicinity of Magazine, Logan county, Arkansas, where the defendant’s cattle were born and raised, and where he purchased them, said that northern cattle could not live there, but would die within a year or two after being brought there. Such testimony had no reference to Indian cattle or Texas cattle, or cattle from the country south of Kansas, and it was highly misleading, injurious and prejudicial to the defendant’s case.
VIII. The trial court gave the following instruction to the jury, to wit:
“If the defendant attempts to show that the disease which destroyed the plaintiff’s cattle was communicated by some other herd of southern cattle, the burden will be upon him to establish this fact by a preponderance of the evidence, if the plaintiff has made out a prima-facie case that his cattle were diseased by defendant’s cattle.”
This instruction is erroneous. The burden of proof in establishing a case did not at any time shift from the plaintiff to the defendant. It was necessary at all times that the plaintiff should show by a preponderance of the evidence that the disease which destroyed or injured the plaintiff’s 'cattle was communicated to them by the defendant’s cattle.
IX. A new trial may be granted by a justice of the peace, where the case has been tried before the justice and a jury, and where “the verdict was obtained by fraud, partiality, or undue means,” or where “the. verdict is not sustained by sufficient evidence, or is contrary to law;” (Justices’ Act, §110.) A justice of the peace probably cannot grant a new trial upon any other grounds, or for any other reasons, than those just mentioned. The defendant moved for a new trial in this case, upon the following grounds, to wit: First, errors of law occurring at the trial, and duly excepted to; second, verdict against the law of the case; third, verdict against the evidence; fourth, misconduct of the justice. Now if thede *423 fendant’s cattle were not Indian cattle or Texas cattle, and if they did not come from the country south of Kansas, then the verdict in the present case was unquestionably against the law of the case; and if the verdict was procured by the act of the justice, in entering the jury-room in the absence of the parties and their counsel, and while the jury were deliberating üpon their verdict, then the verdict was also obtained by undue means. The whole case was tried upon the erroneous theory that it was unlawful to bring the native cattle of Arkansas to the state of Kansas. Evidence was erroneously admitted upon this theory, and instructions were erroneously given and refused upon the same theory, and the verdict was rendered upon such theory. The verdict is undoubtedly contrary to law, and was probably obtained by •undue means. It must be remembered that in cases of this kind there is no appeal, and the justice of the peace has jurisdiction to an unlimited, extent; therefore the statutes should be construed liberally, so as not only to give the justice the right to grant new trials where it is claimed that the verdict is against the law or the evidence, or has been obtained by undue means, but also to give the appellate courts jurisdiction ■to reverse the decision of the justice of the peace, where he has failed or refused to grant a new trial, where a fair and just verdict has not been rendered. In cases of this kind where an erroneous verdict has been rendered, the party aggrieved has no redress, except to apply to the justice for a new trial, and, if refused, to take the case to the district court •on petition in error.
X. The main question in this case is, whether the said statute of 1867, with its amendments, makes it unlawful to bring the native cattle of Arkansas into this state. The justice •of the peace held that it does, while the district court held •otherwise.
In 1861 the state of Arkansas was specially mentioned in the southern-cattle prohibitory act passed that year. (Laws of 1861, p. 280, §§4, 5.) The act passed that year made it unlawful to bring cattle into Kansas “ from the states of Texas, *424 Arkansas, or the Indian territory lying south of the state of Kansas.”
In 1865 another act was passed, leaving out the state of Arkansas, and making it unlawful to bring cattle into this state “from the state of Texas, or from the territory south of the south line of this state.” (Laws of 1865, p. 159, §1.)
In 1867 the law now under consideration was passed, making it unlawful to bring into Kansas “any cattle from the Indian territory south of Kansas, or from the state of Texas;” and §§ 4 and 5 of the act of 1861, making it unlawful to bring cattle into Kansas “from the states of Texas, Arkansas, or the Indian territory lying south of the state of Kansas,” were repealed. (Laws of 1867, pp. 263, 267, §§ 1,15.)
In 1872 the law of 1867 was amended, and it was then made unlawful to bring into Kansas “any cattle from the country south of Kansas, commonly known as Indian cattle or Texas cattle;” and this portion of the law was not again amended or repealed until 1881, when a new act was passed. The plaintiff’s cattle were injured in the summer of 1880, before the act of 1881 was passed, and while the act of 1872, amending the act of 1867, was in force.
Now under the statutes as they existed in 1880, when the plaintiff’s cattle were injured, we do not think that it was unlawful to bring native cattle of Arkansas into the state of Kansas, where no other reason existed for their exclusion except that they were cattle from Arkansas; and the fact that the state of Arkansas was once expressly included in the prohibition and was afterward expressly left out, would seem- to settle this question beyond all controversy. Arkansas cattle are not Indian cattle or Texas cattle, and Arkansas is not south of Kansas; while the only cattle mentioned in- the southern-cattle prohibitory act are Indian cattle and Texas cattle, and the only country to which the prohibition extends is the country south of Kansas.- Now the only country south of Kansas, until you reach the gulf of Mexico, is the Indian territory and the state of Texas. East is not south; and neither is a direction which is partly east and partly south. A *425 combination of the two, or a direction between the two, does not make either. The word “south” simply means south'; and a country south of Kansas is one simply south of some portion of Kansas, and not one southeast of the most easterly portion of the state. We think there can be but little doubt upon this question.
XI. The district court, when it reversed the judgment of the justice of the peace, remanded the cause for a new trial, but rendered judgment against the plaintiff for all costs that had been made in the case, both before the justice and in the district court. In this we think the district court erred. The district court had authority to render judgment for only such costs as had been made in that court, and it should not have rendered any judgment with reference to the costs made in the justice’s court. Section 566 of the civil code has no application to a'case of this kind. That section applies only to cases which may be retained, and which are retained, for trial and final judgment in the district court; and it does not apply to, such cases as this, where the cause should be remanded, and is remanded, to the justice of the peace for final trial and judgment.
The judgment of the district court will b.e modified in this respect. In other respects it will be affirmed.
All the Justices concurring.