No. 44,545

Naomi M. Brown, Substituted as Successor in Interest to Lloyd L. Brown, Deceased, *Appellant,* v. Creighton A. Hardin, M. D., *Appellee.*

(419 P. 2d 912)

Opinion filed November 5, 1966.

W. C. Jones, of Olathe, argued the cause, and *Howard E. Payne, Robert P. Anderson, Keith Martin* and *H. Thomas Payne,* all of Olathe, and *Clay C. Rogers, Lyman Field,* and *Reed O. Gentry,* all of Kansas City, Mo., were with him on the brief for the appellant.

*John J. Alder,* of Kansas City, argued the cause, and *Harley Y. Haskin,* of Olathe, was with him on the brief for the appellee.

The opinion of the court was delivered by

Harman, C.: This is an action to recover damages for personal injury for malpractice wherein the jury verdict was for defendant-appellee. Following the filing of the appeal in this court the plaintiff-appellant died and his widow has now been substituted as his successor in interest herein. For convenience the parties will be referred to as they appeared in the court below.

Briefly stated, the plaintiff's petition alleged that while hospitalized he underwent surgery on his abdominal aorta performed by defendant surgeon on March 8, 1961; that thereafter he developed a gangrenous condition in his lower extremities with the result that on March 21, 1961, it became necessary for defendant to remove both of plaintiff's legs above the knees. Plaintiff alleged that the loss of his legs was occasioned by the negligence of defendant in two respects: (1) That defendant failed to inform him of the possible consequences and hazards of the initial operation and therefore did not obtain plaintiff's informed consent thereto; and (2) that defendant negligently rendered postoperative care following the first operation. Defendant's answer took issue with both allegations of negligence. Claims of error will be discussed in chronological sequence.

Plaintiff claims that the court erred in excluding the testimony of Doctor David Schalker, offered by plaintiff in the form of a deposition taken by defendant. Additional pertinent facts here are: On June 24, 1964, the trial court held the first of three pretrial conferences; at this time the court directed that there be an exchange of names of witnesses at a further pretrial conference to be held November 6, 1964, and set the case for trial on December 7, 1964. On November 5, 1964, pursuant to agreement of the parties, a second pretrial conference was held. Specific inquiry was made by defendant as to the names of any medical witnesses to be called by plaintiff in response to which plaintiff's counsel stated that at that time plaintiff did not have any medical witnesses. The two attorneys for plaintiff who were then present at the pretrial stated that a third attorney for plaintiff had departed that day for California to attend the taking by defendant of the deposition of Doctor David Schalker. Due to the absence of this attorney the court gave plaintiff additional time to furnish defendant's counsel the name of any medical witness to be used by plaintiff. The court fixed a deadline of November 16, 1964, for plaintiff to advise defendant in writing the name of any medical witness to be used by plaintiff and stated that upon failure to do so within that time any such witness would not be permitted to testify. Trial date was set for December 8, 1964. On November 6, 1964, (the day following the second pretrial conference) the deposition of Doctor Schalker was taken by defendant, one of plaintiff's attorneys being present. On November 16, 1964, one of the attorneys for plaintiff who had at-

tended the November 5th conference advised the court and defendant's counsel in writing as follows:

"I am authorized to advise you that counsel for the plaintiff will not use as a witness or witnesses any medical testimony from any doctor or doctors."

A third pretrial conference was held November 24, 1964, at which the attorney for plaintiff who had attended the taking of the Schalker deposition stated that plaintiff desired to offer the deposition in evidence.

Defendant objected to this request which objection was sustained, the court stating its November 5th ruling would be adhered to. Trial was had as scheduled, commencing December 8, 1964. At the trial as a part of his case in chief plaintiff offered the Schalker deposition in evidence. (It appears the deposition was on file in the office of the clerk of the trial court prior to trial.) Defendant's counsel again objected on the ground that the witness was not listed as required by the pretrial order and that it had been stated in writing ten days after the deposition was taken that no medical witness would be used. Defendant's objection was sustained and the deposition was excluded.

Plaintiff contends the court erred in excluding the deposition. He argues the pretrial order in question served no purpose other than to prevent surprise and that there could be no surprise to defendant because he had taken the deposition, and that the pretrial order should have been modified to prevent manifest injustice.

The pretrial conference provided for by K. S. A. 60-216 has become an important part of our procedural process designed, among other things, to acquaint each party in advance of trial with the respective factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at the trial, and enabling all parties to prepare in advance for trial. At pretrial conference the court may make any determination that will aid in the fair, orderly and efficient disposition of the action. (See *Connell v. State Highway Commission*, 192 Kan. 371, 388 P. 2d 637.) The matters specifically mentioned in the pretrial statute are not exclusive. Many courts have come to require advance identification of witnesses to be called at trial, which practice serves a useful purpose and is a proper judicial exercise. Orders entered at pretrial conference have the full force of other orders of court and they control the subsequent course of the action, unless modified at the trial to prevent manifest injustice (K. S. A. 60-216). This latter

proviso reposes in the trial court a large discretion and it is the exercise of this discretion plaintiff claims has been abused to his prejudice. Our difficulty in determining this question here as requested by plaintiff lies in the meager record before us. Neither the deposition nor a summary of it is contained in the record on appeal. All we know about the deposition is what was stated in general terms at the November 24th pretrial, it appearing that Doctor Schalker had been a medical student at the hospital at the time plaintiff was there and had some knowledge of his condition. We think the showing made is insufficient for us to determine prejudice in the exclusionary ruling, assuming *arguendo,* that it may have been erroneous. This court has always been committed to the rule that one seeking reversal of a judgment because of erroneous exclusion of evidence has the burden of demonstrating prejudice as well as error in the ruling complained of. (Hatcher's Kansas Digest, rev. ed., Appeal and Error, §§ 408, 509; West's Kansas Digest, Appeal and Error, §§ 901, 1026, 1032 [1], [2]). Hence the ruling complained of will not be treated as prejudicial to plaintiff.

We turn to the next claimed error. At the trial at the conclusion of plaintiff's evidence the defendant made two motions: A general motion for directed verdict in his favor based, *inter alia,* on insufficiency of evidence as to each ground of negligence and a motion requesting the court to strike from plaintiff's petition every allegation of negligent aftercare on the part of the defendant; in addition defendant "demurred" to plaintiff's evidence based upon insufficiency of evidence as to each ground of negligence. The trial court sustained the motion to strike from plaintiff's petition the allegations of negligent aftercare and also the demurrer to the evidence based upon the negligent aftercare cause of action and removed the latter question from jury consideration. The general motion for directed verdict for defendant was overruled and the cause was eventually submitted to the jury on the sole issue of negligent lack of informed consent. Plaintiff urges the court erroneously removed the question of negligent aftercare from jury determination at this point.

Touching the procedural aspect first, we no longer have the demurrer to evidence in our procedural code and we are aware of no authority for a motion to strike allegations from a pleading to be made upon a jury trial. Requests for relief are to be dealt with according to their true nature, however, rather than in accordance with descriptive labels attached to them. Here the requests were

specific in nature, designed to test the legal sufficiency of plaintiff's evidence upon a particular issue. Being predicated on insufficiency of evidence they are the equivalent of a motion for involuntary dismissal (K. S. A. 60-241 [b]) based "on the ground that upon the facts and the law the plaintiff has shown no right to relief," and will be treated as such. (Pennsylvania National Mutual Cas. Co. v. Dennis, 195 Kan. 594, 408 P. 2d 575.)

Plaintiff points to certain evidence in the record offered by him which he says required the submission to the jury of the issue of negligent postoperative care on the part of defendant. This consisted of lay testimony by relatives of plaintiff to the effect that on March 19, 1961, at a conference with defendant he stated it had become necessary to amputate plaintiff's legs as gangrene had set in because the circulation in plaintiff's legs had been cut off too long during the first operation. Patently this evidence does not pertain to the alleged negligent postoperative care. It should be kept in mind the plaintiff relied on two separate and distinct grounds of negligent conduct throughout, different in quality and in time and supportable by different facts, first, lack of informed consent prior to the operation, and, second, negligent aftercare following the operation. The latter ground can perhaps be best shown by quotation thereof from plaintiff's petition as follows:

"(2) Defendant negligently and carelessly failed and refused to take subsequent corrective surgical action and procedures following the aforesaid operation when he knew, or in the exercise of due care commensurate with the standards of the medical profession should have known, that postoperative complications were developing in the arterial tree leading to, and throughout, plaintiff's lower extremities which could and would lead to the loss of plaintiff's legs unless the arteries therein were opened and post-operative blood clots, thrombi, occlusions or obstructions were flushed, drained and removed therefrom."

There was no charge of negligence in the performance of the operation and no claim of negligence based on the length of time on the operating table. The testimony urged simply was not within the scope of the second ground of negligence claimed, and the court committed no error in removing that issue from jury consideration in the absence of evidence supporting it.

The next claim of error relates to exclusion of testimony attempted to be elicited by plaintiff upon cross-examination of one of defendant's witnesses. Following plaintiff's presentation of evidence and as a part of his case defendant called to the stand a Doctor Schwab

who had been plaintiff's family doctor over a period of years prior to the operation. Doctor Schwab testified as to previous circulation blockage plaintiff had had with his legs. On cross-examination the record reveals the following:

"Q. You have knowledge of this type of procedure, don't you?

"A. Yes.

"Q. He didn't go into it, I want to go into it briefly. Is it not a fact, Doctor, that it is well known to you doctors that one of the common hazards attendant on this type of resection of the abdominal aorta, the big artery and the two arteries that lead from it, and the substitution of his graft, that one of the hazards is that one remains on the operating table so long without any blood flow to the extremities that this . . . [can], as a result, end in amputation postoperatively; you recognize that, don't you?

"A. You have ways of combatting that.

"Q. Yes. And I wish that they could have been employed. What are some of those ways?

"MR. ALDER: We object to that, Your Honor as immaterial to any issue in this case.

"THE COURT: I will sustain the objection."

Plaintiff urges error in the exclusion. Here again the difficulty is that the testimony was not relevant, the only issue in the case then being that of negligent lack of informed consent, and the excluded evidence in nowise related to that.

Plaintiff complains that defendant's counsel in his argument to the jury resorted to inflammatory remarks which prejudiced plaintiff's right to a fair trial. We deem it unnecessary to set forth the entire argument of defendant's counsel. Suffice it to say there was only one objection made during the entire argument, as follows:

"I say to you that if there was a judgment rendered against him a lesser man, in such a case as this, and another Mr. Brown came in, might just say, 'Well, I don't know that I can take care of you.' It isn't because he can't do the surgery, mind you, not because he is not capable, but because he doesn't want to stand the danger of telling a man everything he should, as Dr. Hardin did in this case, and then have to come to Court of Law and answer every question for days on end, because the only evidence against him is one man says that you didn't say it.

"You never know when that is likely to come up. If that be the answer to this case, we have doubly wronged this man. If you render a verdict against this man, my friends, an honorable, skillful, talented doctor, I say that you have, by all means, injured his character.

"MR. FIELD: Wait a minute. I object to that as being inflammatory, an improper argument to the jury. I ask the jury be instructed to disregard it as an appeal for passion and sympathy; that is not in the case.

"THE COURT: I will instruct the jury to disregard it. Proceed."

There was no motion for mistrial and the matter was not further

raised until the motion for new trial was filed, upon hearing which the trial court concluded the verdict was not the result of passion and prejudice aroused by misconduct. We have examined the entire argument complained of. It reflects a vigorous debate climaxing a hotly contested five day trial but we find nothing to justify disturbing the trial court's conclusion. The rule applicable was well stated in *Collins v. City Cab Co.*, 192 Kan. 394, 388 P. 2d 597, as follows:

"A trial court is in a better position than an appellate court to determine whether a verdict resulted from the asserted misconduct of counsel or from passion and prejudice, and, ordinarily, its conclusion in the matter will not be disturbed unless, under all the circumstances, it is plainly in error." (Syl. ¶ 3.)

Finally plaintiff urges misconduct on the part of the jury. On the issue of lack of informed consent by way of rebuttal plaintiff produced a witness from Cabool, Missouri, who testified that he had undergone aortic surgery performed by defendant and had subsequently had a leg amputated and that defendant had not advised him before the aortic operation as to the hazard of loss of legs following such an operation. After the verdict affidavits by two jurors were filed in which the affiants related that statements were made by other jurors in the jury room that they did not give any consideration to the testimony of the rebuttal witness because they were of the opinion he had been "paid" to come to Olathe to testify; that it was also remarked the witness had been "bought off" and they couldn't pay any attention to his testimony. Clearly these affidavits related to matters occurring during the jury's deliberations which were an intrinsic part of the verdict, namely, expression of opinion on weight to be given testimony. There is no suggestion of extrinsic misconduct of any juror, no claim of personal knowledge on the part of any juror or no indication of outside influence as was true in cases relied on by plaintiff. Human nature being what it is, if every wild expression of opinion made in a jury room in the throes of hammering out a verdict could be made the basis for retrial jury verdicts could seldom be preserved. Such inquiries into the validity of jury verdicts, based on mental processes of the jurors, are foreclosed in Kansas, formerly by case law, now by statute. (See *Kincaid v. Wade*, 196 Kan. 174, 410 P. 2d 333; K. S. A. 60-441.)

Prejudicial error requiring reversal not being shown in any of the rulings complained of, the judgment is affirmed.

APPROVED BY THE COURT.