No. 45,614

ELMER DAVIS and CARMEN CRUZ, *Appellees*, v. BEST CABS, INC. and ESTHER L. AULTMAN, *Appellants*, (Oscar L. Jason, Third Party Defendant).

(457 P. 2d 516)

Opinion filed July 17, 1969.

*Ralph B. Foster*, of Wichita, argued the cause, and *Vernon D. Just* and *William A. Wells*, both of Wichita, were with him on the brief for the appellants.

*Patrick Kelly*, of Wichita, argued the cause, and *Johnie C. Frank* and *A. Price Woodard, Jr.*, both of Wichita, were with him on the brief for the appellees.

The opinion of the court was delivered by

HARMAN, C.: This is a consolidated action by two plaintiffs for damages for personal injuries sustained as a result of an intersection collision between a taxicab and another automobile. Plaintiffs prevailed in a jury trial and defendants have appealed.

As developed at trial, the facts essential to an understanding of

the issues here may be summarized as follows: On July 5, 1965, at about 5:30 p.m. plaintiff Elmer Davis, seventy-six years of age, arrived at the bus depot at Wichita, having come from California to visit his children living in Wichita. He thought he had contacted his children but no one was at the depot to meet him. He got into a taxicab operated by Best Cabs and gave the cab driver, Esther L. Aultman, an envelope containing an old address of one of his sons. In checking the address with her dispatcher the driver learned the son worked for a competing cab company. The driver then decided to drive to the dispatcher's office in order to confirm the son's current address. She proceeded west on Ninth Street which intersects with Market Street, a two-lane, one way street running north. She stopped at the Ninth Street stop sign protecting Market Street, then proceeded westward into the intersection where she collided virtually at a right angle with an automobile being driven northward by one Oscar L. Jason. The collision occurred in the northeast quadrant of the intersection. Jason had been drinking and was driving at a high rate of speed. He was accompanied by a passenger, Carmen Cruz. By reason of defective vision Mrs. Aultman had a restricted driver's license which authorized her to drive only while she was wearing corrective glasses. She was not wearing her glasses when the collision occurred. Both Mrs. Cruz and Mr. Davis were injured as a result of the collision.

Plaintiff Elmer Davis first filed his action for damages, naming the cab company as sole defendant and alleging negligence on the part of its driver, Esther Aultman. The Davis petition was filed December 10, 1965. On December 16, 1965, plaintiff Carmen Cruz filed her action for damages naming both the cab company and its driver defendants. Thereafter both defendants, over the objection of plaintiffs, secured consolidation of the two actions for trial and also an order of court naming Oscar L. Jason as a third party defendant in the action with leave to file a third party petition against Jason. Apparently a third party petition was never filed. Jason filed no pleading but appeared *pro se* at the trial. Neither side called him as a witness and he did not testify in his own behalf. The jury was not instructed to bring in a verdict declaring his liability and no adjudication was made as to him. The record does not indicate upon what theory he was made a party to the lawsuit. Apparently he has faded out of it and mention is made of the fact only because his joinder may have given rise to some later confusion on the part

of the jury. Plaintiff Davis' verdict was for $25,400 and that of plaintiff Cruz was for $1,750, and judgments were entered thereon.

Both defendants appeal, alleging trial errors which we will review chronologically.

In his opening statement to the jury counsel for appellants stated that appellee Davis was a nonpaying passenger in the taxicab. Objection to this statement was sustained. Appellants then asked for leave to amend their answer and the pretrial conference order to raise the issue whether Davis was a paying passenger at the time of the collision. The trial court denied this request, which ruling is assigned as error. At the time the request was made appellants offered no reason or excuse for its tardiness and they offer none here, but simply say its refusal works an injustice to them.

In his petition appellee Davis specifically alleged he was a paying passenger in the taxicab and he charged negligence on the part of the driver. In its answer filed February 28, 1966, the cab company admitted Davis' allegation in his petition that he was a paying passenger. It denied negligence contributing to the collision and alleged the collision was the result of Jason's negligence. In its motion to consolidate the actions filed by Davis and Cruz the cab company alleged that "Both  .  .  .  actions are based upon the same alleged acts of negligence of this defendant.  .  .  .  All of the facts and issues in both of these actions  .  .  .  are substantially the same and this defendant truly believes that the defenses in both of these actions are identical." Thereafter and on March 8, 1967, a pretrial conference was held, as a result of which an order was entered which stated in pertinent part:

"2.  The remaining issues of fact to be determined are as follows:

"  .  .  .

"(c)  Negligence of Esther L. Aultman, if any.

"  .  .  .

"IT IS FURTHER ORDERED that the trial of this case shall be limited to issues contained in this Order except by order of the court."

The pretrial order raised no issue as to Davis' status as an occupant of the cab and made no mention of gross and wanton negligence on the part of appellants. The record also reveals that the day following the collision appellant Esther Aultman gave a written statement that Mr. Davis was "a paying fare." Trial commenced November 6, 1967.

In *Brown v. Hardin*, 197 Kan. 517, 419 P. 2d 912, we said:

"The pretrial conference provided for by K. S. A. 60-216 has become an important part of our procedural process designed, among other things, to acquaint each party in advance of trial with the respective factual contentions of the parties upon matters in dispute, thus reducing the opportunity for maneuver and surprise at the trial, and enabling all parties to prepare in advance for trial. At pretrial conference the court may make any determination that will aid in the fair, orderly and efficient disposition of the action. . . . Orders entered at pretrial conference have the full force of other orders of court and they control the subsequent course of the action, unless modified at the trial to prevent manifest injustice (K. S. A. 60-216). This latter proviso reposes in the trial court a large discretion. . . ." (pp. 519-520.)

Here we cannot say the trial court abused sound discretion in denying the requested amendments. If granted, the standard of appellants' duty to Davis would have been, after trial had commenced, drastically changed—from a duty to exercise the highest degree of care to a paying customer (*Slade v. City Cabs, Inc.*, 193 Kan. 105, 392 P. 2d 127) to one to refrain from gross and wanton negligence under our guest statute. Apparently the requests were based upon Mrs. Aultman's willingness at time of trial to testify that because of her sympathy toward the plight of the aged Mr. Davis in not being met at the depot as expected and in not having his son's current address she was not going to exact a fare from him for the ill-fated trip. In view of all the circumstances we have related the trial court may well have looked askance at this belated proposal of altruism toward Mr. Davis.

Appellants' next complaint is the trial court erroneously refused to permit a police officer to express his opinion as an expert witness as to the speed of the Jason vehicle. The officer in question was conceded to be an experienced, qualified traffic accident investigator; however, in his foundation testimony he stated he had never qualified in court as an expert witness in accident reconstruction and that he was not qualified as an expert in that area, having had no training in the study of the ratio of force, stress factors in metal or physics of motion. This witness was not the investigating officer for the collision but he was at the scene soon after it occurred and he observed the damage to the vehicles. The Jason vehicle had left no skid marks from braking action prior to the collision, the only skid mark being a side one made by the taxicab as a result of the impact. Obviously that which was sought from the witness was an opinion on speed of the Jason vehicle based on the damage to the vehicles, no other data being shown by way of foundation testimony upon which such an opinion could be based.

The qualifications of an expert witness and the admissibility of his testimony are matters within the sound discretion of the trial court (*Howard v. Stoughton,* 199 Kan. 787, 433 P. 2d 567; *Avey v. St. Francis Hospital & School of Nursing,* 201 Kan. 687, 442 P. 2d 1013). Here the witness conceded he was not qualified to express an opinion as an accident reconstruction expert and, upon the foundation data shown in the record, absent such qualification, any opinion given would necessarily have been largely speculative. The record reveals no proffer of testimony by the witness as to what his testimony would have been. At pretrial conference appellants had listed as one of their witnesses an officer who concededly was qualified as an expert in accident reconstruction, but appellants did not call him as a witness. Appellants did offer other evidence which was received at the trial as to excessive speed of the Jason vehicle. This court has always been committed to the rule that one seeking reversal of a judgment because of erroneous exclusion of evidence has the burden of demonstrating prejudice as well as error in the ruling complained of (*Brown v. Hardin,* supra). We cannot treat the ruling here complained of as prejudicially erroneous.

Appellants' next two specifications may be treated together since they arise from the same source. The case against them was submitted to the jury on the theory their negligence, along with that of Jason, was a concurrent cause of the collision, and the jury was so instructed. During the course of its deliberations the jury submitted to the trial judge two questions, as follows:

"1. Question: Can both drivers be found contributors to the accident.

"2. Question: If yes, can a ruling be made in favor of one plaintiff and not the other for damages."

After discussion with counsel the trial judge in open court gave the jury the following additional instruction:

"You are further instructed, as I heretofore have said, that you are trying two separate law suits. Although they have been consolidated for trial, yet, you are to consider them separately on the facts in evidence. The plaintiff Elmer Davis has sued Best Cabs only. The plaintiff Carmen Cruz-Stonecipher has sued defendants Esther L. Aultman and Best Cabs. You will keep this differential in mind in your deliberations. When the concurring negligence of two or more parties causes an injury, each person is wholly liable regardless of the relative degree to which each contributes to the injury. In addition to these instructions the Court has also furnished you with two packets of verdicts entitled in each individual case. One verdict from each of the packs should contain your verdict in this litigation."

The jury then resumed its deliberation and not having reached a verdict court was adjourned at 5:00 p. m. The following morning, after considerable discussion with counsel and over the objection of appellants, the judge determined he had not specifically answered the jury's questions and, on his own initiative, appended to the paper containing them, the following written statement:

"The answer is YES to both questions if you find with a preponderance of the evidence."

The trial judge then hand carried the paper to the jury room and delivered it to the jury.

Appellants object to the foregoing on the basis all the court's instructions unduly overemphasized the theory of concurrent negligence and that the trial judge's action and method of answering the jury's questions constituted communications not in open court and were prejudicial to them.

During the colloquy preceding the transmittal of the note back to the jury, appellants did preserve their objections to any such action by the judge; however, after the trial judge had announced his determination to take the note with his answer back to the jury room, counsel for appellants stated, "We don't have to be present, do we, Judge?", to which the judge replied in the negative. Appellants do not contend the note was incorrectly answered nor do they charge any specific misconduct of the judge other than as indicated. Upon hearing of appellants' motion for new trial the trial judge stated that in delivering the note to the jury he did not talk to any of the jurors but merely handed the note to them.

It is not uncommon for a jury to request information after it has retired to deliberate. Our procedural code recognizes this and provides a method for dealing with it in open court (K. S. A. 60-248 [e]). Compliance with the code would obviate being plagued as here. Appellants cite cases where judgments based on jury verdicts have been reversed because the trial judge entered the jury room and talked to the jury, reversal being based upon appearance of evil rather than any specific showing of evil. We do not think that line of cases applicable under the facts here. However, we cannot put the stamp of approval upon the practice of a trial judge carrying information to the jury room. Wherever possible the trial judge should avoid casting himself in a role where he must be a testimonial witness to the fact the secrecy and sanctity of the jury deliberations have been preserved. Despite the appeal of measures which may

appear expedient to the busy trial judge, strict adherence to statutory provisions cannot be too strongly emphasized. We should state this record makes it clear nothing prejudicial to the rights of any litigant occurred and the trial judge's action was prompted only by conscientious anxiety that the jury be properly informed.

Appellants do not challenge the correctness of the court's instructions on concurrent negligence but simply charge the issue was unduly emphasized. The principal initial instruction on the subject consisted of PIK 5.02. There was slight repetition in two subsequent single-sentence instructions although at the time of settling them the court's attention was directed by objection to only one. We consider this infraction too innocuous for reversal. The issue of concurrent negligence subsequently arose in one of the jury's questions. This question may well have been prompted, as already indicated, by the presence at trial of the third party defendant and the lack of clarity in the instructions as to his status and liability to judgment. For example, the PIK 5.02 instruction given by the court stated: "It is no defense that the negligence of a person *not joined as a party* may have been one of the concurring causes of the injury." (Our emphasis.) The jury's wonderment as to the application of this instruction to Jason can well be imagined. Appellants brought Jason into the lawsuit as a party; then he was left dangling. Instructions should not be repetitious so as unduly to emphasize any aspect of the case but, under the circumstances, we see nothing in the instructions prejudicial to appellants' substantial rights.

The last specification of error is based upon the following: During the trial Esther Aultman spoke to a juror saying she thought she might be acquainted with the juror. The juror replied she was mistaken; then reported the conversation to the trial judge. This is the whole story of the incident. The cab company sought a mistrial for this act of its employee and co-defendant. A judgment is not to be upset for inconsequential irregularity. No error being made to appear in the judgments appealed from, they are affirmed.

APPROVED BY THE COURT.