No. 45,952

LOLA I. HOWARD, *Appellant,* v. GEORGE R. MILLER, *Appellee.*

(485 P. 2d 199)

Opinion filed May 15, 1971.

*Donald A. Bell,* of Wichita, argued the cause, and *Brian G. Grace,* of Wichita, was with him on the brief for the appellant.

*William R. Smith,* of Wichita, argued the cause, and *Stephen J. Jones,* of Wichita, was with him on the brief for the appellee.

The opinion of the court was delivered by

HARMAN, C.: This was an action for damages for personal injury arising out of an automobile collision. By answers to special questions a jury found both litigants negligent in the operation of their vehicles and it returned a general verdict for defendant George R. Miller. Plaintiff Lola I. Howard has appealed from the judgment subsequently rendered against her.

We briefly summarize the evidence received at trial.

The locale of the collision was the intersection of Twenty-fourth and Mascot streets in Wichita, which was approximately three-fourths of a block south of plaintiff's home. Mascot street, a north and south street, dips just prior to intersecting Twenty-fourth street from the north. A large church was located in the area northeast of the intersection, seventy-four feet north of the street line. On the date of the collision, June 9, 1966, high weeds were growing near the northeast corner of the intersection. The weed patch was fifteen to twenty-five feet in width and extended 135 feet east from the

intersection along the north side of Twenty-fourth street. Mascot street south of the intersection was all concrete; the concrete extended east and west of the intersection for a distance of ten feet and north of the intersection for a distance of fifteen feet. North of the intersection Mascot street was a dirt road. Twenty-fourth street east of the intersection was graveled.

At about 8:10 a. m. on the day in question plaintiff left her home, driving southward in her Volkswagen. She testified she looked to her right as she approached the intersection (this view was open and unobstructed). As she passed the church she looked to the left and could see down Twenty-fourth about 150 feet. Defendant's car was not in her view at that time and she saw no other movement. She looked back again to the right and was either still looking to the right or proceeding to look back when she was struck by defendant's Buick, which she had not previously seen. After passing the church she had not again looked to the left. The weeds could have partially obstructed her view to the left but the view between the church and the weeds was clear. After the collision defendant came over to plaintiff's automobile and said he had not seen her and evidently she had not seen him.

An investigating officer placed the point of impact somewhat south of the center of the intersection in its southwest quadrant. Both streets were thirty feet wide. Defendant told the officer he had seen plaintiff's car from a distance of fifty feet. The officer found no evidence of speed in excess of thirty miles per hour. He observed skidmarks twenty-nine feet in length on the concrete which were made by defendant's automobile up to the point of impact. The skidmarks extended further eastward into the graveled part of Twenty-fourth street but were not identifiable because other vehicles had obscured them after the collision. The right front of the Buick struck the left front fender and left side of the Volkswagen.

On behalf of plaintiff a police officer who qualified as an expert in accident reconstruction testified as to certain conclusions respecting the collision. He believed the speed of the Volkswagen at the point of impact to have been nineteen miles per hour. He was not permitted to testify as to other matters which will be noticed later.

The defendant testified he had not previously crossed the intersection where the collision occurred and was not familiar with it.

As he drove west on Twenty-fourth he was traveling fifteen or twenty miles per hour. He started to cross the intersection and didn't see anything. Then all of a sudden through the weeds he saw plaintiff's car. He could see plaintiff wasn't looking at him. He tried to avoid the collision by swerving to the left and putting on his brakes. He was probably forty or fifty feet from her car when he first saw her. He believed her vehicle entered the intersection first although only slightly ahead of his. He was given a citation for failure to yield the right-of-way and was convicted in court.

The jury in its answers to special questions found the defendant guilty of negligence causing the collision, which negligence consisted of failure to maintain proper lookout, excessive speed, failure to yield right-of-way and failure to maintain proper control; the jury also found plaintiff guilty of contributory negligence in failing to maintain proper lookout and, as indicated, returned a general verdict for defendant.

In our view the most serious matter raised on appeal concerns unrecorded communication between the trial court and the jury which occurred in other than open court and without notice to the parties. Counsel for plaintiff did not learn of the communication until after the jury had returned its verdicts, and then only through conversation with the jury foreman. The matter was called to the trial court's attention by way of plaintiff's motion for new trial. The facts concerning it were stipulated to by the parties, which stipulation was incorporated into the court's order overruling defendant's motion for new trial, as follows:

"(A) That during the course of the deliberations of the jury herein on April 17, 1968, a question arose amongst the jurors relative to the instructions and/or to the special interrogatories which were submitted to the jury;

"(B) That to resolve this question the jury composed and sent to the Court a question written out on a piece of paper and handed to the bailiff, which question was delivered to the Court;

"(C) That the exact form and content of this question is not now ascertainable, but that it apparently pertained to a question as to whether or not an error in judgment was negligence;

"(D) That the Court composed an answer in response to this question and had it delivered by the bailiff to the jury, the precise terms and nature of this answer being unknown at this time, but which answer probably informed the jury that it was their duty to decide whether or not an error in judgment was negligence;

"(E) That the Court did not advise counsel for the plaintiff nor counsel for the defendant that this question had been received from the jury by the Court at any time prior to making a response to this question and that counsel

for the plaintiff only discovered this occurrence by reason of conversations with the jury foreman after the jury had returned its verdict; and,

"(F) That this stipulation is being entered into for and on behalf of both parties by reason of the fact that no record was made at the time of the argument of this Motion and by reason of the fact that it is the desire of both parties to enable an accurate record to be made of this above described occurrence at the least possible expense to said parties."

Plaintiff asks for new trial because of disregard of statutes governing communication with a jury.

K. S. A. 60-248 provides:

"Jury trial procedure. . . .

"(e) *Jury may request information after retiring.* After the jury has retired for deliberation, if they desire to be informed as to any part of the law or evidence arising in the case, they may request the officer to conduct them to the court, where the information on the point of law shall be given, or the evidence shall be read or exhibited to them in the presence of, or after notice to, the parties or their counsel."

K. S. A. 60-251 provides:

"Instructions to Jury. . . .

"(b) *When waived.* No party may assign as error the giving or failure to give an instruction unless he objects thereto before the jury retires to consider its verdict stating distinctly the matter to which he objects and the grounds of his objection unless the instruction is clearly erroneous. Opportunity shall be given to make the objections out of the hearing of the jury."

Since territorial days we have continuously had statutes providing that communication between court and jury as to the law in the case shall take place *in the presence of, or after notice to, the parties or their counsel.* Despite this plain injunction against private communication between judge and jury, our reports reflect many instances of its disregard, which practice has always been held to be erroneous. See, e. g., *Joseph v. National Bank,* 17 Kan. 256, 262, (1876).

Our cases on the subject appear to fall in two categories. First, in instances in which the facts were fully disclosed and all that was communicated by the judge to the jury was set forth in the record, and it affirmatively appeared no prejudice resulted from the communication, the irregularity was held not to be reversible error. A recent example of this situation, although slightly different factually in that the trial judge there hand-carried answers to jury questions into the jury room, is *Davis v. Best Cabs, Inc.,* 203 Kan. 930, 457 P. 2d 516, in which this court stated:

"It is not uncommon for a jury to request information after it has retired to

deliberate. Our procedural code recognizes this and provides a method for dealing with it in open court (K. S. A. 60-248 [e]). Compliance with the code would obviate being plagued as here. Appellants cite cases where judgments based on jury verdicts have been reversed because the trial judge entered the jury room and talked to the jury, reversal being based upon appearance of evil rather than any specific showing of evil. We do not think that line of cases applicable under the facts here. However, we cannot put the stamp of approval upon the practice of a trial judge carrying information to the jury room. Wherever possible the trial judge should avoid casting himself in a role where he must be a testimonial witness to the fact the secrecy and sanctity of the jury deliberations have been preserved. Despite the appeal of measures which may appear expedient to the busy trial judge, strict adherence to statutory provisions cannot be too strongly emphasized. We should state this record makes it clear nothing prejudicial to the rights of any litigant occurred and the trial judge's action was prompted only by conscientious anxiety that the jury be properly informed." (pp. 935-936.)

See, also *Canfield v. Oberzan*, 196 Kan. 107, 410 P. 2d 339; *Hammargren v. Montgomery Ward & Co.*, 172 Kan. 484, 241 P. 2d 1192, and *State v. Scholl*, 118 Kan. 629, 236 Pac. 816, in which latter case this court declared: ". . . all [the trial judge's] communications with the jury ought to be in open court." (p. 635.)

The second category of cases is comprised of those in which it was impossible to know whether prejudice resulted from the error and a new trial was therefore ordered. Illustrative of this line are *Tawzer v. McAdam*, 134 Kan. 596, 7 P. 2d 516, and *Eikmeier v. Bennett*, 143 Kan. 888, 57 P. 2d 87.

In *Tawzer* the trial judge entered the jury room during its deliberation at its request and discussed certain aspects of the case. In holding the incident prejudicially erroneous this court, after quoting R. S. 60-2911 and 60-2913 which for present purposes are identical with K. S. A. 60-248 (c) and 60-248 (e), stated:

"The statute [60-2911] which provides for the seclusion of the jury from all communication with any person other than their own membership is quite strict and specific.

. . . . . . . . . . . . .

"The only pertinent exception to the foregoing statutory rule deals with the jury's possible desire to be further informed on the law or the evidence, in which case the jury should be brought into court and counsel for the litigants notified and given an opportunity to attend. [p. 599]

. . . . . . . . . . . . .

"In view of these statutory provisions it was altogether irregular for the presiding judge to go to the jury room and hold conversation with members of that body while they were deliberating on their verdict. It was highly improper to do so touching any aspect of the case under consideration in the absence of counsel for the litigants. The law books are laden with decisions

holding that such departure from correct practice constitutes reversible error. [p. 600.]

. . . . . . . . . . . . . . . .
". . . the jurors could hardly fail to be influenced by the judge's conversation with them on that point in the jury room. This court therefore feels bound to hold that the incident complained of was prejudicially erroneous." (p. 601.)

In *Eikmeier* this court reversed because the trial court gave the jury a coercive instruction in the absence of counsel for either party. Although the instruction was recorded this court noted that the manner in which it was given could not be separated from its nature and further stated:

"We are not inclined to hold that in every case it would be error to give the jury additional instructions without notice to or presence of parties or their counsel, although the practice is subject to much criticism. The difficulty in showing a prejudicial result is almost insurmountable, and the trial courts should avoid putting the losing party in such a predicament." (p. 891.)

See also *Stager v. Harrington*, 27 Kan. 414, 421.

A case closely akin factually to that at bar confronted the Massachusetts Supreme Court in 1915 in *Lewis v. Lewis*, 220 Mass. 364, 107 N. E. 970. There, after the jury had retired to deliberate, the trial judge responded to a request by it for information. The court never advised the parties or their counsel of this occurrence. The jury thereafter returned a verdict. The nature of the question and the judge's response were not disclosed on the record and the complaining party never learned the nature of the communication. Upon a hearing for motion for new trial the judge noted that in his opinion the question was immaterial and he had so advised the jury. After reviewing numerous authorities the court stated:

"In all these cases where it has been held that the irregularity was not fatal, the facts were disclosed fully and all that was communicated by the judge to the jury was plainly set forth on the record. In the case at bar, the excepting party did not know at the time and does not know now the substance or nature of the communication from the jury to the judge, nor of his reply. The statement filed by the judge throws no light upon the subject, and we are as ignorant as the excepting party." (p. 369.)

The Massachusetts court then considered a statute prohibiting the granting of a new trial unless it appeared the substantial rights of the complaining party had been affected. The court concluded whatever the question was that had been asked it must have related to information about the law and the statute in question was not applicable to the giving of a secret instruction to the jury. In reversing the lower court exclusively on this issue the court said:

"Correct instructions upon matters of law are of the very substance of jury trial at common law. . . . Secret instructions or clandestine communications, no matter if given with the best of intentions, contravene this fundamental and essential conception of common law trial by jury." (p. 370.)

For other like decisions see anno. 41 A. L. R. 2d § 10, p. 305.

Defendant here urges affirmance of the judgment because the question which was communicated to the trial court was answered correctly, and hence there was no prejudice. The difficulty is the record fails to support this contention factually. The most the record tells us is the answer *probably* was correct and *probably* there was no prejudice. We do not believe a litigant in a court of record should be required to accept this kind of clouded disposition of his cause.

Here the question of contributory negligence was crucial to plaintiff. The private instruction may or may not have borne on this issue and its giving may or may not have affected the result. We do not know and because we are unable, from examination of the entire record, to declare the error harmless we must hold it to be reversible error and ground for a new trial.

Plaintiff complains of other matters which should be briefly noticed since new trial must be ordered.

Plaintiff's accident reconstruction expert was not permitted to give his opinion as to speed of defendant's automobile when it struck plaintiff's vehicle and as to the relative times each had entered the intersection. Plaintiff urges error in the exclusion. The trial court's action was evidently based on the fact the witness had examined defendant's Buick only from photographs and had used repair estimates on it furnished by others and because the length of its skidmarks was not wholly ascertainable. Under K. S. A. 60-456 (*a*) a trial court is vested with wide discretion in receiving opinion evidence (*Osborn v. Lesser*, 201 Kan. 45, Syl. ¶ 2, 439 P. 2d 395). We have reviewed the proffer of the excluded testimony and are unable to declare abuse of discretion in the exclusion.

Plaintiff contends there was no evidence of contributory negligence and therefore that issue should not have been submitted to the jury. It is only when different minds can reasonably arrive at but one result that fact issues become questions of law justifying a court in substituting its judgment for that of a jury (*Osborn v. Lesser*, supra). The evidence here is not of that character. The nature of the view at the intersection and plaintiff's actions in ap-

proaching and entering it, as already set forth, sufficiently indicate why submission to the jury of the issue of contributory negligence was proper.

Somewhat allied with this is plaintiff's complaint against an instruction given and the refusal to give another requested. The court's instruction No. 12 stated:

"The driver of a motor vehicle upon a public street, even though he be in law the favored driver, or the driver with the right of way, and even though he has the right to assume others traveling on the public street will comply with the obligation imposed upon them, is not absolved from the consequence of his own independent negligent acts."

The instruction correctly stated the law (*Jarboe v. Pine,* 189 Kan. 44, 366 P. 2d 783; *Morris v. Hoesch,* 204 Kan. 735, 466 P. 2d 272) and taken as it must be in connection with all the other instructions did not unfairly emphasize defendant's theory of the case. Nor do we believe the failure to give the requested instruction compounded that emphasis. Its substance so far as appropriate was contained in other instructions given and we are satisfied no prejudice resulted from the refusal.

For the reason given the judgment is reversed with directions to sustain plaintiff's motion for new trial.

APPROVED BY THE COURT.