No. 38,395

ROBERT O. DRYDEN, *Appellant*, v. KANSAS CITY PUBLIC SERVICE COMPANY, A Corporation, *Appellee*.

(238 P. 2d 501)

Opinion filed December 8, 1951.

*John E. Blake,* of Kansas City, argued the cause, and *Bill E. Fabian* and *Robert E. Fabian,* both of Kansas City, were with him on the briefs for the appellant.

*Willard L. Phillips,* of Kansas City, argued the cause, and *Charles L. Carr,* of Kansas City, Mo., and *Edwin S. McAnany, Thomas M. Van Cleave, Patrick B. McAnany* and *Thomas M. Van Cleave, Jr.,* all of Kansas City, were with him on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This was an action to recover damages alleged to have been sustained when a bus operated by defendant came to a sudden stop and plaintiff was thrown against a rear vision mirror and injured. Judgment was for the defendant, sustaining its motion for judgment notwithstanding the general verdict on answers to special questions.

The petition alleged after the formal parts that plaintiff boarded a bus at an intersection and became a passenger for hire; that when he was in the act of paying his fare the operator of the bus, one

Lake, caused it to start and suddenly stopped it, causing plaintiff to lose his footing and be thrown against the rear vision mirror, injuring him. The petition charged acts of negligence as follows:

"(a) In starting said vehicle without giving the proper signal and without first ascertaining that such starting or movement could be made with reasonable safety.

"(b) In stopping the bus with a sudden and violent jerk without warning to the plaintiff herein.

"(c) In operating said vehicle with a rear vision mirror which was broken and the edge thereof jagged, thereby causing a dangerous condition to defendant's passengers, and particularly to this plaintiff."

The defendant answered denying each and every allegation in the plaintiff's petition except that it was a corporation and operated a bus line in the city of Kansas City, Kan. The answer further alleged that if the plaintiff was injured the injuries were not caused by any act of negligence by the defendant but were caused by the negligence of the plaintiff because he knew that at that particular intersection there were many vehicles and the bus might be required to stop suddenly and he made no effort to protect himself against such change in traffic; that he failed to look and observe traffic in the intersection.

The reply was a general denial.

The jury returned a verdict for $3,000 and answered special questions as follows:

"Ques. No. 1. Did the defendant's bus, just prior to the time the plaintiff struck his head against the rear vision mirror, start up from the loading zone at the southeast corner of Minnesota Avenue on 10th Street and proceed substantially north? Answer: Yes.

"Ques. No. 2. As the bus approached the south curb-line of Minnesota Avenue, did a northbound automobile turn from the left of the bus in front of the bus so closely as to create danger of a collision? Answer: Yes.

"Ques. No. 3. Was the bus in danger of colliding with another vehicle when the operator put on the brakes and brought it to a stop? Answer: Yes.

"Ques. No. 4. Did the bus operator stop his bus in order to prevent danger of a collision with a vehicle that made a righthand turn from the left side of the bus? Answer: Yes.

"Ques. No. 5. Do you find that plaintiff's injury was the result of an unavoidable accident? Answer: No.

"Ques. No. 6. When the driver of the bus started up from the loading zone, did he have any reason to anticipate that the driver of the automobile to the left of the bus would make a righthand turn in front of the bus, so as to require the operator to bring the bus to a sudden stop? Answer: Yes.

"Ques. No. 7. If you answer Question No. 6 'Yes,' state in detail what the operator observed, or what he should have observed, that would have given him this warning? Answer: Driver, Mr. Lake, should have observed ap-

proaching car before moving bus, instead of moving bus 2 feet and then observing car at rear. In any event being 25 feet back from south curbline he should have been on alert to a possible right turn by approaching vehicle.

"Ques. No. 8. If you find a verdict in favor of the plaintiff, state each and every act of negligence of which you find the defendant guilty. Answer: Bus driver, Mr. Lake, failed to observe traffic before starting bus, after starting bus he observed traffic and saw a car approaching on his left at approximately 20 to 25 miles per hour.

"In our opinion he should have taken the precaution to have slowed or stopped until he was assured of the intentions of the vehicle.

"Ques. No. 9. When the automobile commenced to turn to the right, state in feet where its left side was with reference to the center line of 10th Street. Answer: Approximately 3 feet East of center line of 10th Street.

"Ques. No. 10. When the automobile commenced to turn to the right, how far West of the East curbline of 10th Street were the right wheels of the bus? Answer: 3 feet."

Neither party made any motion to strike any of the answers. They were not attacked in any way. The defendant filed its motion for a new trial based on statutory grounds. This motion was never ruled upon. Defendant filed a motion for judgment on the answers to special questions notwithstanding the general verdict. This motion was sustained and a judgment entered in favor of the defendant.

The plaintiff has appealed and his specifications of error are that the court erred in sustaining the motion of the defendant for judgment on the special findings of the jury and in entering judgment in favor of the defendant and against the plaintiff on the special findings of the jury.

The brief of appellant states the question involved to be, should the defendant's motion for judgment on the special findings of the jury have been overruled?

As we have already noted, the defendant denied negligence and pleaded contributory negligence. At the trial, however, the defense of contributory negligence was not pressed. There was no dispute but that defendant boarded the bus; that the bus stopped suddenly while he was paying his fare and he was thrown against the rear vision mirror and injured. The defendant contended that the bus operator was compelled to stop suddenly in order to avoid collision with a car that passed it on the left and suddenly turned to the right in its path. The plaintiff concedes this but contends that the bus operator negligently started up when he knew, or should have known, that the car would turn in front of it.

In our consideration of the special questions we find the bus starting up after having stopped at the intersection and proceeding substantially north. There is no dispute but that this was a four-lane street and the bus was on the outside, or east lane. Questions 2, 3 and 4 find that as the bus approached the south curb line of Minnesota Avenue a north-bound automobile turned from the left in front of the bus so closely as to create danger of a collision and the bus was in danger of colliding with it when the operator put on the brakes and brought it to a stop to prevent this collision.

The plaintiff being a passenger for hire on defendant's bus, the driver was held to the highest degree of care for his safety and is liable for the slightest negligence. (See 10 Am. Jur. § 1245, p. 163.) Following this rule, we said in *Picou v. Kansas City Public Service Co.,* 156 Kan. 452, 134 P. 2d 686:

"It is the duty of a carrier of passengers for hire, including a street-railway company, to use the greatest skill, care and foresight practicable for the safety of its passengers in the preparation and management of the means of conveyance furnished for that purpose."

The plaintiff invokes a rule that where the situation of peril arose because of the bus driver's negligence, the emergency rule cannot be invoked in his behalf.

In answer to questions 6, 7, 8, 9 and 10 the jury found that when the driver of the bus started up from the loading zone he should have anticipated that the driver of the automobile to the left of the bus would make a right-hand turn in front of it, so as to require the operator to bring it to a sudden stop and that the operator of the bus should have observed the approaching car before moving the bus instead of moving the bus two feet and then observing the car at the rear of the bus and at any event being twenty-five feet back from the south curb line he should have been on the alert to a possible right-hand turn by the approaching vehicle.

The eighth question asked the jury to state the acts of negligence of which the jury found the defendant guilty. The jury answered:

"Ques. 8. If you find a verdict in favor of the plaintiff, state each and every act of negligence of which you find the defendant guilty. Answer: Bus driver, Mr. Lake, failed to observe traffic before starting bus, after starting bus he observed traffic and saw a car approaching on his left at approximately 20 to 25 miles per hour.

"In our opinion he should have taken the precaution to have slowed or stopped until he was assured of the intentions of the vehicle."

Plaintiff contends the above answers convict the defendant of

negligent conduct, which placed the bus in a position where it became necessary to stop the bus suddenly.

In a case factually similar to the instant case, our Tenth Circuit Court of Appeals in *Wichita Transp. Corporation v. Braly*, 150 Fed. 2d 315, adhered to the same general rule of law.

There is no question in the instant case but that there was a sudden stop by appellee's bus and that appellant was injured by reason thereof and that the bus operator made such a sudden stop in order to prevent a collision with a vehicle which had made a right-hand turn ahead of him. In answer to special question No. 5— Do you find that plaintiff's (appellant) injury was the result of an unavoidable accident? the jury answered "No." While the bus driver made the sudden stop to avoid a collision, the answer to question No. 5 returned by the jury finds in effect that the bus driver was guilty of negligence in placing himself in such a position as to require him to make an immediate, sudden stop. He had moved the bus from a stationary position 25 feet from the intersection prior to making his sudden stop. The question was in the jury's mind as to what the bus driver did with reference to observing traffic and what vigilance he used while he was traveling that twenty-five feet. This court cannot say as a matter of law that a bus driver in the exercise of the highest degree of care and vigilance was not bound to look, observe or anticipate that someone might make a right-hand turn ahead of him. There is a reasonable inference that the automobile which approached and entered the intersection to the left of the bus driver came into view of the bus driver at some time prior to making the turn ahead of him.

In the case of *Wichita Transp. Corporation v. Braly*, supra, the court said at page 317:

"The appellant (transportation company), sought to be relieved of liability for the injury by showing that the bus moved into the intersection travelling approximately three miles per hour in low gear, and that when the driver of the automobile, while moving directly in front of the bus suddenly stopped to avoid hitting a pedestrian, the bus driver exercised proper care in bringing his bus to as smooth a stop as possible to keep from hitting the car."

The court stated with reference to such contention:

"The bus driver, however, does not acquit himself of the presumption of negligence arising out of the unusual and sudden stop by showing that he exercised proper care in bringing the bus to as smooth a stop as possible to keep from hitting the car. The crucial question here is not what he did after he was faced with the emergency—it is how he happened to become involved in

it. . . . Having been faced with the necessity of stopping the bus in a manner to cause injuries to passengers, it became the duty of appellant to show *to the satisfaction of a jury* that it did not negligently create or contribute to the creation of the emergency which necessitated the 'sharp, unusual and violent' stop." (Italics supplied.)

See, also, *Safety Motor Transit Corporation v. Cunningham,* 161 Va. 356, 171 S. E. 432.

The jury having found that such sudden stop could have been avoided said in the answer to special question No. 6 that the driver should have anticipated that the driver of the automobile on the left of him might make a right-hand turn in front of the bus, and in answer to question No. 7, that the bus driver should have observed approaching cars before moving the bus instead of moving the bus two feet and then observing the car to the rear. And they further stated in any event the bus driver came twenty-five feet from the south line of Minnesota Avenue and should have been on the alert to a possible right-hand turn by approaching vehicles and in their answer to question No. 8, that the bus driver failed to observe traffic before starting the bus and after starting the bus he observed and saw the car approaching on his left and that he should have taken precaution to have slowed or stopped his bus until he was sure of the intention of the vehicle. These answers returned by the jury settled questions of fact. They were not questions of law to be determined by the court. The jury found by the answers and by the general verdict that the bus company in carrying this appellant for hire failed to exercise that highest degree of care commensurate to the occasion and in view of such general verdict and findings we cannot say as a matter of law that there was no negligence shown or found on the part of appellee's driver.

There is no inconsistency in the answers to special questions returned by the jury and the general verdict. We said in *Gabel v. Hanby,* 165 Kan. 116, 193 P. 2d 239:

"In considering the special findings, the court is not permitted to isolate certain findings and ignore others. All are to be considered together and if one interpretation leads to inconsistency and another leads to harmony with the general verdict, the latter is to be adopted."

We held in *Morrison v. Hawkeye Casualty Co.,* 168 Kan. 303, 212 P. 2d 633, that special findings were to be liberally construed with a view of ascertaining their intended meaning and regardless of how unskillfully expressed, they were to be given the meaning intended by the jury. In the case of *Mehl v. Carter,* 171 Kan. 597, 237 P. 2d 280 we stated:

"For the purpose of obtaining a ruling on a motion for judgment *non obstante veredicto* it is conceded the findings are supported by evidence. Such a motion is not sustained by reason of some possible inconsistencies between the findings but only when the special findings are contrary to the general verdict and compel judgment in favor of the movant as a matter of law. (Syl. ¶ 2.)

"The question of negligence, including the determination of proximate cause, ordinarily rests in the province of the jury. (Syl. ¶ 3.)

"When minds might differ with respect to negligence of a person in failing to anticipate injury might result from his conduct and some independent intervening cause the question of his negligence must be submitted to the jury." (Syl. ¶ 4.)

In view of what has been said, the judgment of the lower court should be reversed.

As has been noted, due to the ruling of the trial court on the motion for judgment on the answers to special questions, the motion of defendant for a new trial was never passed on. The trial court, however, never did approve this verdict. Plaintiff asks us to reverse the trial court and to order the verdict of the jury reinstated and judgment entered for plaintiff accordingly. We cannot do that since the trial court never has approved this verdict. (See *Torpey v. Kansas City Public Ser. Co.*, 149 Kan. 735, 89 P. 2d 899; also *Walker v. Colgate-Palmolive-Peet Co.*, 157 Kan. 170, 139 P. 2d 157.)

The judgment is reversed with directions to the trial court to consider whether the verdict should be approved and if after such consideration the court approves the verdict judgment should be rendered thereon for the plaintiff; otherwise the court should grant a new trial.

PRICE, J., concurs in the result.

THIELE, J., dissents.