No. 43,668

Lincoln Slade, *Appellee*, v. City Cabs, Inc., a Corporation and Dean E. Strole, *Appellants*.

(392 P. 2d 127)

Opinion filed May 9, 1964.

*Daniel C. Bachmann,* of Wichita, argued the cause, and was on the briefs for the appellants.

*Sidney L. Foulston, Jr.,* of Wichita, argued the cause, and *Enos E. Hook* and *John H. Gerety,* both of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

Hatcher, C.: This is an appeal from a verdict and judgment rendered in favor of a passenger of a taxicab and against the taxicab company and its driver.

The basic facts will be briefly stated.

On January 1, 1960, at approximately 2:30 a. m., the plaintiff, Lincoln Slade, was a passenger in a taxicab owned by the defendant, City Cabs, Inc., which was being driven by the defendant, Dean E. Strole. The taxicab was proceeding east on Ninth Street approaching Piatt Street in the city of Wichita, Kansas. At the same time an automobile was proceeding north on Piatt Street approaching Ninth Street. The automobile and the taxicab collided at the intersection. The driver of the taxicab and the passenger were thrown from the vehicle and rendered unconscious.

Ninth Street is a through street. Piatt Street is controlled by a stop sign at its intersection with Ninth Street. The driver of the automobile ignored the stop sign. There was evidence to the effect that both vehicles were exceeding the speed limit which was thirty

miles per hour. More detailed facts will be presented as we discuss the specific issues presented.

The plaintiff in his amended petition alleged that among the negligent acts of commission or omission of the driver of the taxicab were one or more of the following:

"a) Failing to keep a proper lookout; and

"b) Failing to have the taxicab under control; and

"c) Failing to observe the vehicle driven by Virgil E. Riley; and

"d) Driving without due regard for the rights of others, and more particularly plaintiff; and

"e) Failing to slow or stop his vehicle when he saw, or should have seen, Virgil E. Riley traveling at such a rate of speed, and more particularly at a rate of speed in excess of 35 miles per hour, that he could not stop his vehicle prior to entering the intersection."

The petition did not allege specifically excessive speed as one of the acts of negligence on the part of the driver of the taxicab, but at the close of plaintiff's evidence he requested, and received, permission to amend the petition to conform to the proof.

The defendants' amended answer denied all the allegations of the amended petition except the residence of the parties and that an accident occurred at the approximate time and place alleged. It then stated:

"Defendants and each of them deny that they or either of them were guilty of negligence set forth in the petition or of any negligence which was a proximate cause of the collision and the resulting injuries, if any."

The case came on for trial and at the close of plaintiff's evidence the defendants demurred thereto. The demurrer was overruled. At the close of all the evidence the defendants renewed their demurrer to plaintiff's evidence and also moved for a directed verdict. These motions were overruled. The jury returned a verdict in favor of the plaintiff in the sum of $15,044.00. The verdict was approved by the district court. A motion for a new trial was overruled and defendants have appealed.

The appellants raise but two questions before this court: should defendants' demurrers have been sustained where all evidence failed to establish any basis for a beginning point of defendants' negligence, and was the verdict given under the influence of passion and prejudice and excessive?

In testing the sufficiency of the evidence in the present case, we should first consider the degree of care which the appellants owed the appellee.

The appellee was a paying passenger in appellants' public vehicle. The driver of the taxicab is therefore held to the highest degree of care and foresight for the appellee's safety and is liable for the slightest negligence. A passenger in a taxicab has no control over the vehicle and has no means of exercising care for his own safety.

In *King v. Vets Cab, Inc.*, 179 Kan. 379, 295 P. 2d 605, it is stated, beginning at page 382 of the opinion:

"Taxicab campanies carrying passengers for hire are common carriers of those passengers and, as such, are required to use the greatest skill, care and foresight to avoid injuries to their passengers, and such carrier is bound to exercise the highest degree of care that is reasonably practical in safely carrying passengers and setting them down safely at their destination. ( *Clark v. Southwestern Grayhound Lines*, 148 Kan. 155, 79 P. 2d 906; *Cloud v. Traction Co.*, 103 Kan. 249, 173 Pac. 338; *Dryden v. Kansas City Public Service Co.*, 172 Kan. 31, 238 P. 2d 501; *Picou v. Kansas City Public Service Co.*, 156 Kan. 452, 134 P. 2d 686.) Many other cases sustaining the mentioned rules will be found in West's Kansas Digest, Carriers, § 280, and 1 Hatcher's Kansas Digest [Rev. Ed.], Carriers, § 31 and § 36. . . ."

The rule applicable to testing the sufficiency of evidence when challenged by a demurrer has received attention by this court on many occasions. Without extending this opinion, it should suffice to say that in testing the sufficiency of evidence as against a demurrer, the evidence and the inferences that may be properly drawn therefrom must be considered in the light most favorable to the party against whom the demurrer is directed and if the evidence and the inferences viewed in that manner are of such character that reasonable minds, in the exercise of fair and impartial judgment, may reach different conclusions thereon, the demurrer should be overruled and the issue submitted to the jury. (*Walker, Administratrix v. Gerritzen*, 179 Kan. 400, 295 P. 2d 635; *Kendrick v. Atchison, T. & S. F. Rld. Co.*, 182 Kan. 249, 320 P. 2d 1061; *Creten v. Chicago, Rock Island & Pac. Rld. Co.*, 184 Kan. 387, 337 P. 2d 1003; *White v. Rapid Transit Lines, Inc.*, 192 Kan. 802, 391 P. 2d 148 [No. 43,589].)

Observing the above rule, coupled with the additional rule that a driver of a taxicab must exercise the highest degree of care and foresight to avoid injury to his passenger, we will review the evidence.

The appellee was the only eye witness that testified to the circumstances leading up to the collision and the collision itself. The driver of the taxicab received a brain concussion and could remem-

ber nothing about the collision. The appellee testified that about a block from the accident he saw an automobile approaching from the south. He looked at the speedometer and the taxicab was traveling at a speed of thirty-five miles per hour. He was not experienced as a driver but believed that the automobile was traveling at a speed of thirty-five miles per hour. A police officer who examined the scene of the accident estimated that the taxicab was not going over thirty-five miles per hour and the speed of the automobile was forty to forty-five miles per hour. It was a misty night and no skid marks were present.

The appellee testified further that as the vehicles approached the intersection they both maintained the same rate of speed, although the driver of the automobile appeared to apply his brakes just before the collision. A house blocked the view of the automobile for a time after the witness first saw it. It again came into view about 100 feet from the intersection. The witness testified:

"A. We proceeded on to Ninth and Piatt. About a block away, I see this car coming up from the south on Piatt, and . . . (interrupted).

"Q. You say you were about a block away when you saw this?

"A. Yes. As we come closer and closer, he—I look at the driver; he is still driving at his rate of speed; and then I look again, and he is still not doing any slowing down or nothing; and the next time, why, this is it."

The witness testified on cross-examination:

"Q. You would say that it was a perfect forty-five degree angle, then? [location of the taxicab and the automobile.]

"A. That is right.

"Q. From the corner?

"A. That's right.

"Q. And that this angle continued, then, all the way . . . (interrupted)

"A. That's right.

"Q. (continuing) . . . into the intersection?

"A. That's right.

"Q. Now, do you think that the other car was gong to stop?

"A. It appeared to me he wasn't.

"Q. Throughout the entire procedure of watching it, it appeared to you this other car wasn't going to stop?

"A. Yes, sir.

. . . . . . . . . . . . . . .

"Q. Do you want to tell this Jury you want a cab driver driving on a through street in a cab to look on a forty-five degree angle, instead of watching where he is driving?

"A. To observe everything that is within his—you know—that he could have seen. I am sitting behind him. I could see. He is supposed to be sitting in front. He should be able to see more than I."

This court cannot say as a matter of law that a taxicab driver exercising the highest degree of care and diligence was not bound to look, observe and anticipate that a driver of an automobile approaching an intersection at a high rate of speed might not observe a stop sign. In *Dryden v. Kansas City Public Service Co.*, 172 Kan. 31, 238 P. 2d 501, this court stated at page 35 of the opinion:

". . . The question was in the jury's mind as to what the bus driver did with reference to observing traffic and what vigilance he used while he was traveling that twenty-five feet. This court cannot say as a matter of law that a bus driver in the exercise of the highest degree of care and vigilance was not bound to look, observe or anticipate that someone might make a right-hand turn ahead of him. There is a reasonable inference that the automobile which approached and entered the intersection to the left of the bus driver came into view of the bus driver at some time prior to making the turn ahead of him."

Neither can we say as a matter of law that under the circumstances the driver of the taxicab was not negligent in approaching and entering the intersection at an excessive rate of speed, i. e., thirty-five miles per hour in a thirty mile per hour speed zone.

The appellants next contend that the verdict was so excessive as to indicate passion and prejudice on the part of the jury and that a new trial must be granted.

We cannot agree. The record discloses nothing that would incite the jury's passion or prejudice. No objection is raised as to the introduction or rejection of evidence or to the instructions. Although there was some conflict in the testimony, the evidence showed loss of work, pain and suffering over an extended period of time and continuing pain and suffering. There was also evidence to the effect that because of the injury and the pain resulting therefrom, the appellee was required to change the nature of his profession or employment.

The rules applicable for testing a verdict when challenged as excessive were discussed in *Neely v. St. Francis Hospital & School of Nursing*, 188 Kan. 546, 552, 363 P. 2d 438, where it is stated:

". . . This court fully and clearly set out the manner in which the question of excessiveness of a verdict should be considered in *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321, where it was stated:

" 'In the nature of things, it is impossible to formulate a hard and fast rule on the question of the amount of damages to be allowed in a personal injury action for the simple reason that determination of the matter necessarily depends upon the facts and circumstances of each particular case.

" 'Generally speaking, it may be said that no verdict is right which more than compensates, and none is right which fails to compensate. Pain and suf-

fering have no known dimensions, mathematical or financial, and there is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of exact proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries sustained, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence.' (Syl. ¶¶ 2, 3.)

"On the record before us we cannot say the amount of the verdict is such as to shock the conscience of the court and we therefore hold the verdict was not excessive." (See also, *Kettler v. Phillips,* 191 Kan. 486, 382 P. 2d 478.)

On the record before us in this case we cannot say that the verdict in the amount of $15,044.00 is such as to shock the conscience of the court or to indicate passion and prejudice on the part of the jury.

A careful examination of the record discloses no reason why a new trial should be granted.

The judgment is affirmed.

APPROVED BY THE COURT.

PRICE and SCHROEDER, JJ., dissent.