(843 P.2d 267)

No. 66,371

WANDA LOU TULEY, *Appellee/Cross-Appellant,* v. CITY OF KANSAS CITY, KANSAS, *Appellant/Cross-Appellee.*

Opin-
ion filed December 4, 1992.

*Mary Ann Neath,* assistant city attorney, for the appellant/cross-appellee.

*Thomas T. O'Neill,* of Carson & Fields, of Kansas City, for the appellee/cross-appellant.

Before DAVIS, P.J., ELLIOTT and LEWIS, JJ.

DAVIS, J.: Both parties appeal the jury verdict in this personal injury action filed by Wanda Lou Tuley against the City of Kansas City, Kansas. The City appeals the district court's denial of its motion for summary judgment and directed verdict and challenges the jury's verdict as contrary to the evidence. Wanda Lou Tuley cross-appeals the district court's order for a new trial on damages entered after the first trial and alleges error in the amount of the remittitur ordered by the trial court. We affirm.

Tuley filed suit seeking damages for injuries she sustained by her fall into a defective catch basin in front of her home. The City denied any negligence and moved for summary judgment based on its claim of immunity under the Kansas Tort Claims Act, K.S.A. 75-6104(h). This motion was denied and the City moved upon the close of all evidence for a directed verdict. This motion was denied and the jury returned a verdict finding Wanda Lou Tuley 20% at fault, finding the City 80% at fault, and awarding total damages of $47,700, which was then reduced by the comparative fault percentage to $38,160.

Thereafter, the court granted the City's motion for vacation of judgment and amendment of the judgment or new trial and ordered Tuley to accept a remittitur of $25,000, reduced by the comparative fault to $20,000, or in the alternative to submit to a new trial solely on the issue of damages. Tuley appealed, but

we dismissed the appeal because the order granting a new trial was interlocutory. The Supreme Court denied Tuley's petition for review and a second jury trial on the issue of damages was had. The jury returned a verdict of $16,416.50, reduced by the comparative fault to $13,133.20.

A foot of snow fell in Kansas City on December 14, 1987, the day before the accident. Tuley called the City to have her street plowed, went outside to move her car, and noticed a barricade, which she previously had seen placed on the sidewalk near the defective catch basin, sitting in the middle of the street. The barricade was a sawhorse-type with orange and white diagonal stripes and a flashing light that operated at night. This barricade had been placed over the defective catch basin by the City in August 1987. The City had received one report of a child "almost [falling] into" the catch basin in October 1987. The City had checked the barricade as recently as December 10, 1987, to make sure it was in place and the flashing light was working.

Tuley decided to move the barricade from the street to the sidewalk, where she had seen it before. She testified that she did not know of the defective catch basin. On the day of the accident, the snow covered the catch basin and as she placed the barricade the top of the catch basin gave way and she fell into the catch basin up to her chest. She suffered injuries to her foot and leg.

### Summary Judgment and Directed Verdict

The City moved for summary judgment under K.S.A. 75-6104(h) of the Kansas Tort Claims Act which provides governmental immunity from liability for "damages resulting from: . . . the . . . unauthorized removal of any traffic or road . . . . warning device unless it is not corrected by the governmental entity responsible within a reasonable time after actual or constructive notice of such . . . removal."

While there is argument by Tuley that the barricade may not be a traffic or road warning device under the terms of the statute, streets are defined as including the sidewalk. *Grantham v. City of Topeka,* 196 Kan. 393, 401, 411 P.2d 634 (1966). We conclude that the barricade was a warning device intended to protect people from injury. It therefore falls within the class of items listed

in K.S.A. 75-6104(h). There is no dispute that the removal of the barricade from the sidewalk was unauthorized and that the City had no notice of the removal.

· The City's argument that it is granted immunity under K.S.A. 75-6104(h) assumes that the sole and proximate cause of Tuley's injuries was the unauthorized removal of the barricade. If this were the case, K.S.A. 75-6104(h) would provide the City with immunity. However, the City has a duty to maintain its streets in a reasonably safe manner. *Draskowich v. City of Kansas City*, 242 Kan. 734, 739, 750 P.2d 411 (1988). The barricade in question had been placed over the defective catch basin by the City in August 1987. The City had received one report in October 1987 that a child was nearly injured at the location because of the defective catch basin. Tuley was not injured until December 15, 1987. On the morning of the injury, the defective catch basin was covered by snow and the barricade was in the middle of the street. Tuley decided to remove the barricade from the street and place it on the sidewalk where she had seen it before.

The trial court denied the City's motion for summary judgment because the question remained whether the cause of Tuley's injury and resulting damage was the City's failure to maintain its sidewalks in a reasonably safe condition. See *Grantham*, 196 Kan. at 402. "The burden [is] placed upon the governmental entity or employee to establish entitlement to any of the exceptions set forth in K.S.A. 75-6104." *Hopkins v. State*, 237 Kan. 601, 609, 702 P.2d 311 (1985).

In this case, the City did not show that it was entitled to immunity under exception (h) of K.S.A. 75-6104. Plaintiff's theory and the question presented to the jury was whether the City had breached its duty to keep streets in a reasonably safe condition, thereby causing injury and damage to plaintiff.

This is not a case where an unwary pedestrian with no knowledge steps in a catch basin because a sign was removed without authorization or knowledge of the City. The sign had been in place for four months. Plaintiff knew of its location, had seen it before, and removed it from the street attempting to replace it where it originally had been placed by the City. The factual question presented to the jury under proper instructions was whether under all the circumstances the City breached its duty

to keep its sidewalks in a reasonably safe condition. Under the facts of this case, the grant of summary judgment under K.S.A. 75-6104(h) would have been error.

The City next contends that there was no evidence that it breached its duty to keep its sidewalks reasonably safe, which entitled it to a directed verdict after the plaintiff had presented her evidence.

"When appellate review is sought on a motion for directed verdict, 'the court is required to resolve all facts and inferences reasonably to be drawn from the evidence in favor of the party against whom the ruling is sought and where reasonable minds could reach different conclusions based on the evidence,' the trial court's denial of the motion must be affirmed." *Kuhl v. Atchison, Topeka & Santa Fe Rwy. Co.,* 250 Kan. 332, 342, 827 P.2d 1 (1992).

The City attempts to support its argument that there is no evidence to support a breach by the City of its duty to keep its sidewalks reasonably safe with the following facts: It regularly checked the barricade's placement; it had not been notified the barricade had been removed; there was no expert testimony that the sidewalk was not safe; and, finally, the barricade was enough to remedy the defect in the sidewalk. The City further argues that the evidence showed Tuley failed to keep a "proper lookout" and did not exercise the "degree of care which a reasonably careful person would exercise."

The evidence did show that the City had more than four months' notice of the defective catch basin prior to this accident. Two months prior to Tuley's mishap, the City had been notified that a child had almost fallen into the defective catch basin. This accident occurred in the dead of winter just after a heavy snowfall. Under these circumstances, the jury's finding that the City's negligence was the proximate cause of Tuley's injuries was not unreasonable, and the motion for a directed verdict was properly denied.

The City further asserts that it was entitled to a directed verdict on the basis of Tuley's own negligence. However, Tuley testified she saw the barricade in the street and had previously seen it in place on the sidewalk but did not know why it was there. After she moved her car out of the way to enable the City to clean the snow from the street, she picked up the barricade from

the middle of the street and moved it back to where it had been. This action by Tuley was not entirely unreasonable. The jury in this case set the apportionment of fault at 80% for the City and 20% for Tuley. The City apparently contends that the jury should have found Tuley 100% at fault. The evidence, however, did not support such a determination. Thus, it was not error for the court to deny the City's motion for a directed verdict.

Finally, the City contends that the jury verdict is contrary to the evidence.

"[W]hen a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, [the appellate court] does not weigh the evidence or pass on the credibility of the witnesses. 'If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal.' " *Brown v. United Methodist Homes for the Aged,* 249 Kan. 124, 127, 815 P.2d 72 (1991).

The evidence, as we discussed above, indicates that the City had notice and failed to act to correct the problem for a period of over four months. The jury concluded under proper instructions and upon controverted evidence that the defective catch basin was the proximate cause of Tuley's injuries. We, therefore, may not disturb this verdict even though a contrary verdict might have been reached on the same evidence. Based upon all of the evidence, we conclude that the verdict is supported by substantial competent evidence.

### Remittitur

Tuley contends that the trial court's order that she accept a remittitur or face a new trial solely on the issue of damages was erroneous. The process of reducing a jury's award of damages, if the court feels the jury erred in its award, is known as remittitur. There is no current express statutory authorization to grant a remittitur. Prior to the adoption of the new civil procedure code in 1964, the granting of a remittitur was authorized by G.S. 1949, 60-3004. *Samsel v. Wheeler Transport Services, Inc.,* 246 Kan. 336, 360, 789 P.2d 541 (1990), *overruled on other grounds Bair v. Peck,* 248 Kan. 824, 844, 811 P.2d 1176 (1991). However, the power to order a remittitur is within the common-law power of the court. 246 Kan. at 358-59. The practice stems from a decision by United States Supreme Court Justice Story, sitting at circuit,

in *Blunt v. Little*, 3 F. Cas. 760 (C.C.D. Mass. 1822) (No. 1,578). 11 Wright & Miller, Federal Practice and Procedure: Civil 2815 (1973). A remittitur is not available where the verdict is the product of passion or prejudice, one of the six grounds for a new trial under K.S.A. 60-259(a). *Dixon v Prothro*, 17 Kan. App. 2d 19, 22, 830 P.2d 1221, *rev'd on other grounds* 251 Kan. 767, 840 P.2d 491 (1992).

Tuley, however, argues that the legislature has only authorized the granting of a new trial under the six grounds listed in K.S.A. 60-259(a), that the reason cited by the court is not one of those grounds, and that therefore the court lacked jurisdiction to issue the order granting a new trial, citing principally *Mettee v. Urban Renewal Agency*, 219 Kan. 165, 547 P.2d 356 (1976).

In *Mettee*, the trial court ruled the jury's damage award in a condemnation proceeding was "grossly excessive under the credible evidence." 219 Kan. at 166. The landowner had expert witnesses testify that the value of the land was $46,785 and $42,000, while the agency's experts stated the value was $9,375 and $10,500. The jury accepted the $42,000 figure as the land's value. The trial court refused to accept the jury's verdict and instead opined that the fair market value of the land was $28,000. The landowner appealed the court's order for a remittitur or new trial.

In reversing the trial court, the Kansas Supreme Court in *Mettee* noted that the statute permits the granting of a new trial where the verdict is in whole or in part contrary to the evidence, but further noted that the verdict was within the evidence offered to establish the value of the land. The Supreme Court held that because there was no ground under K.S.A. 60-259(a) by which to grant a new trial, the trial court lacked jurisdiction to order a remittitur or new trial. 219 Kan. at 168-70.

In a case involving inadequate, not excessive, damages the Kansas Supreme Court, in reviewing the important policy reasons for allowing juries to determine damage awards, noted: "This is not to say however that there is no judicial control over jury verdicts in personal injury cases where the verdict is manifestly excessive or inadequate." *Smith v. Newell*, 210 Kan. 114, 118, 499 P.2d 1112 (1972).

Tuley recognizes the rule that the appellate courts have the power to order a remittitur where a verdict shocks the conscience

of the appellate courts, citing, *inter alia, Barnes v. St. Francis Hospital & School of Nursing,* 211 Kan. 315, Syl. ¶ 9, 507 P.2d 288 (1973) (when the verdict is so excessive as "to shock the conscience of the court . . . , [an appellate court] may, on appropriate occasions, tentatively affirm the judgment, provided the plaintiff will accept a judgment for a lesser amount or, in the absence of such an acceptance, reverse the judgment"). Tuley concludes that the power of remittitur is reserved to the appellate courts. The trial court, she argues, is limited to granting a new trial on the grounds listed in K.S.A. 60-259(a).

However, in the more recent case of *Folks v. Kansas Power & Light Co.,* 243 Kan. 57, 77, 755 P.2d 1319 (1988), the Supreme Court, discussing *Barnes,* affirmed the trial court's authority to grant a remittitur:

"Where a verdict is so excessive and out of proportion to the damages sustained as to shock the conscience of the court and judgment has been entered, the *trial judge* may tentatively affirm the judgment, provided that the plaintiff will accept a reduced judgment, or may grant a new trial." (Emphasis added.)

This year, the Supreme Court clearly confirmed the authority of the district court to order that a plaintiff accept a remittitur or new trial. In *Dixon v. Prothro,* 251 Kan. 767, the court described a procedure that may be used when the amount of a jury's award of damages shocks the conscience of the court: "In such a case, the court first refuses to accept the verdict; the court offers the affected party the opportunity to accept a verdict more in line with the evidence; and, if that party refuses, the court orders a new trial. *Samsel,* 246 Kan. at 359."

The Kansas Supreme Court's statements in *Folks, Samsel, Smith,* and *Dixon*—notwithstanding the *Mettee* case—establish the trial court's authority under the common law to order a remittitur.

Tuley further contends that the court abused its discretion by ordering her to accept a remittitur or face a new trial solely on the issue of damages. The power to order a remittitur is discretionary. A review of the evidence considered by the trial court convinces us that reasonable persons may disagree about the grant of a remittitur in this case. "[I]f reasonable persons could differ as to the propriety of the action taken by the trial court, it cannot

be said the trial court abused its discretion." *State v. Ji,* 251 Kan. 3, 18, 832 P.2d 1176 (1992).

Affirmed.